GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (SBN 134180)
Marc L. Godino (SBN 182689)
Danielle L. Manning (SBN 313272)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: lglancy@glancylaw.com
Email: mgodino@glancylaw.com
Email: dmanning@glancylaw.com

GREENSTONE LAW APC
Mark S. Greenstone (SBN 199606)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
Email: mgreenstone@greenstonelaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NOTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO**

| | |
|---|---|
| MARY QUACKENBUSH, GHERI SUELEN, ANNE PELLETTIERI, MARISSA FEENEY, and CARYN PRASSE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC., a California corporation, and HONDA MOTOR COMPANY, LTD, a foreign corporation,<br><br>Defendants. | Case No. 3:20-cv-05599-WHA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT AMERICAN HONDA MOTOR CO., INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. William Haskell Alsup<br>Continued Date: February 18, 2021<br>Time: 8:00 AM<br>Place: San Francisco Courthouse, Courtroom 12 (19th Floor) |

### **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED ....................................... 1

III.    STATEMENT OF RELEVANT FACTS .................................................. 1

        A.      Background to The VTC Defect and Why it Is a Safety Hazard .................. 1

        B.      Honda's Knowledge of the VTC Defect................................................. 3

        C.      Plaintiffs' Experiences ......................................................................... 4

IV.     ARGUMENT............................................................................................. 4

        A.      THE CALIFORNIA FRAUD CLAIMS ARE ADEQUATELY PLED .......... 5

                1.      Defendant Failed To Disclose Material Facts ...................................... 5

                2.      Defendant Had A Duty To Disclose the VTC Defect ......................... 7

                3.      Defendant Actively Concealed Material Facts.................................. 10

                4.      The FAC Satisfies Rule 9(b)............................................................. 11

                5.      A Direct Transaction Is Not Required ............................................. 12

                6.      The UCL Claims Are Adequately Pled............................................ 13

        B.      THE VIRGINIA FRAUD CLAIMS ARE ADEQUATELY PLED ............. 13

        C.      THE ILLINOIS FRAUD CLAIMS ARE ADEQUATELY PLED .............. 15

        D.      THE IMPLIED WARRANTY CLAIMS ARE ADEQUATELY PLED....... 17

                1.      Plaintiffs' Allege Their Vehicles Are Unmerchantable.................... 17

                2.      The Implied Warranty Claims Do Not Require Privity.................... 19

                3.      Pellettieri and Feeney Provided the Requisite Notice ...................... 21

        E.      THE FRAUDULENT OMISSION CLAIMS ARE NOT BARRED BY THE
                ECONOMIC LOSS RULE........................................................................ 21

        F.      PLAINTIFFS' CLAIMS ARE NOT TIME BARRED ................................ 22

        G.      PLAINTIFFS HAVE STANDING TO PURSUE INJUNCTIVE RELIEF... 24

1

H.      PLAINTIFFS MAY SEEK EQUITABLE RELIEF....................................25

V.      CONCLUSION.........................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**CASES**

3
*Aberin v. Am. Honda Motor Co., Inc.*,
    2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) ....................................................25

4
5
*Abi-Najm v. Concord Condo., LLC*,
    280 Va. 350 (2010)...............................................................................................22

6
7
*Alexander v. Se. Wholesale Corp.*,
    978 F. Supp. 2d 615 (E.D. Va. 2013)...................................................................14

8
*Am. Honda Motor Co. v. Super. Ct.*,
    199 Cal.App. 4th 1367 .......................................................................................8, 9

9
10
*Anderson v. Apple Inc.*,
    2020 WL 6710101 (N.D. Cal. Nov. 16, 2020)................................................21, 22

11
12
*Asghari v. Volkswagen Grp. of Am., Inc.*,
    42 F. Supp. 3d 1306 (C.D. Cal. 2013)............................................................11, 18

13
14
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................4

15
16
*Astiana v. Hain Celestial Group*,
    783 F.3d 753 (9th Cir. 2015).................................................................................25

17
*Bayliner Marine Corp.*,
    *v. Crow*, 257 Va. 121, (1999) ...............................................................................19

18
19
*Bd. of Directors of Bay Point Condo. Ass'n, Inc. v. RML Corp.*,
    57 Va. Cir. 295 (2002) ..........................................................................................20

20
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................4

21
22
*Borkman v. BMW of N. Am., LLC*,
    2017 WL 4082420 (C.D. Cal. Aug. 28, 2017) ......................................................24

23
24
*Brand v. Hyundai Motor Am.*,
    226 Cal. App. 4th 1538, 173 Cal. Rptr. 3d 454 (2014) ........................................18

25
26
*Bryde v. General Motors, LLC*,
    2016 WL 6804584 (N.D. Cal. Nov. 11, 2016)............................................*passim*

27
*Bunn v. Ford Motor Co.*,
    2020 WL 991529 (N.D. Cal. Mar. 2, 2020) .........................................................23

28

*Cabebe v. Nissan of N. Am., Inc.*,
  2018 WL 5617732 (N.D. Cal. Oct. 26, 2018) ......................................................................24

*Catalan v. GMAC Mortg. Corp.*,
  629 F.3d 676 (7th Cir. 2011) .............................................................................................21

*Chamberlin v. Ford Motor Co.*,
  2003 WL 25751413 (N.D. Cal. Aug. 6, 2013) ....................................................................12

*Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc.*,
  342 Ill. App. 3d 150 (2003) ........................................................................................17, 18

*Cholakyan v. Mercedes-Benz USA, LLC*,
  796 F. Supp. 2d 1220 (C.D. Cal 2011) ................................................................................6

*Cirulli v. Hyundai Motor Co.*,
  2009 WL 5788762 (C.D. Cal. June 12, 2009) ......................................................................6

*Clark v. Hershey Co.*,
  2019 WL 913603 (N.D. Cal. Feb. 25, 2019) .......................................................................12

*Clemens v. DaimlerChrysler Corp*,
  534 F.3d 1017 (9th Cir. 2008) ...........................................................................................13

*Collins v. eMachines, Inc.*,
  202 Cal. App. 4th 249 (2011) ..........................................................................................5, 7

*Connick v. Suzuki Motor Co.*,
  174 Ill. 2d 482 (1996) ................................................................................15, 16, 17, 21

*De Bouse v. Bayer*,
  235 Ill. 2d 544 (2009) ......................................................................................................16

*Deras v. Volkswagen Grp. of Am., Inc.*,
  2018 WL 2267448 (N.D. Cal. May 17, 2018) ....................................................................25

*Deseret Tr. Co. v. Unique Inv. Corp.*,
  2019 WL 7938223 (C.D. Cal. Sept. 10, 2019) ...................................................................21

*Donlen v. Ford Motor Co.*,
  217 Cal. App. 4th 138 (2003) ..............................................................................................6

*Ehrlich v. BMW of North America, LLC*,
  801 F. Supp. 2d 908 at 918 (C.D. Cal. Aug. 11, 2010) .......................................................6

*Elward v. Electrolux Home Prod., Inc.*,
  264 F. Supp. 3d 877 (N.D. Ill. 2017) ................................................................................23

*Enea v. Mercedes-Benz USA LLC,*
  2019 WL 402315 (N.D. Cal. Jan. 31, 2019) ......................................................13

*Evans v. Trinity Indus., Inc.,*
  137 F. Supp. 3d 877 (E.D. Va. 2015)..................................................................24

*Fain v. Am. Honda Motor Co.,*
  2019 WL 8690214 (C.D. Cal. Dec. 19, 2019) ....................................................25

*Falco v. Nissan N. Am. Inc.,*
  2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) ......................................................6

*Falk v. Gen. Motors Corp.,*
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) .....................................................6, 7, 9, 11

*Finney v. Ford Motor Co.,*
  2018 WL 2552266 (N.D. Cal. June 4, 2018) ......................................................21

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.,*
  218 Ill. 2d 326 (2006).........................................................................................22

*Flynn v. FCA US LLC,*
  327 F.R.D. 206 (S.D. Ill. 2018) ..........................................................................20

*Francis v. Gen. Motors, LLC,*
  2020 WL 7042935 (E.D. Mich. Nov. 30, 2020) .................................................21

*Genito Glenn, L.P. v. Nat'l Hous. Bldg. Corp.,*
  50 Va. Cir. 71 (1999) .........................................................................................20

*Gilbert Fin. Corp. v. Steelform Contracting Co.,*
  82 Cal. App. 3d 65 (Ct. App. 1978) ...................................................................19

*Hamm v. Mercedes-Benz USA, LLC,*
  2019 WL 4751911 (N.D. Cal. Sept. 30, 2019).....................................................12

*Hanley v. Cottrell, Inc.,*
  2006 WL 516731 (S.D. Ill. Mar. 1, 2006)............................................................24

*Hardt v. Chrysler Grp. LLC,*
  2015 WL 12683963 (C.D. Cal. Mar. 16, 2015) ..............................................9, 11

*Henderson v. Volvo Cars of N. Am., LLC,*
  2010 WL 2925913 (D.N.J. July 21, 2010) ..........................................................18

*Herremans v. BMW of N. Am., LLC,*
  2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) .......................................................10

*Mui Ho v. Toyota Motor Corp.*,
  931 F. Supp. 2d 987 (N.D. Cal. Mar. 14, 2013) ......................................................6, 8, 10, 12

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ................................................................................................7

*Hubbard v. Dresser, Inc.*,
  271 Va. 117 (2006) ...............................................................................................................17

*Huu Nguyen v. Nissan N. Am., Inc.*,
  2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) .......................................................................25

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) ..................................................................................17

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
  355 F. Supp. 3d 582 (E.D.Mich. 2018) (applying Illinois law) ...........................................20

*In re Ford Motor Co. E-350 Van Products Liability Litig. (No. II)*,
  2008 WL 4126264 (D.N.J. Sep. 2, 2008) .............................................................................16

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*,
  2019 WL 3000646 (C.D. Cal. May 22, 2019) ..................................................................21, 22

*In re Ford Tailgate Litigation*,
  2015 WL 7571772 (N.D. Cal. Nov. 25, 2015) ......................................................................13

*In re Gen. Motors LLC CP4 Fuel Pump Litig.*,
  393 F. Supp. 3d 871 (N.D. Cal. 2019) ..................................................................................20

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg.,*
  *Sales Practices & Prod. Liab. Litig.*,
  2017 WL 2646286 (E.D. Va. June 20, 2017) .......................................................................14

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) .........................................................................10, 19, 20

*In re MyFord Touch Consumer Litig.*,
  291 F. Supp. 3d 936 (N.D. Cal. Feb. 14, 2018) ...................................................................18

*In re Porsche Cars N.A., Inc.*,
  880 F. Supp. 2d 801 (S.D. Oh. July 19, 2012) ......................................................................6

*In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*,
  155 F. Supp. 3d 772 (N.D. Ill. 2016) ...................................................................................21

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
    2017 WL 1902160 (D.N.J. May 8, 2017) ...........................................................................17

*In re: Gen. Motors LLC Ignition Switch Litig.*,
    2016 WL 3920353 (S.D.N.Y. Jul. 15, 2016) .....................................................................14

*Isip v. Mercedes-Benz USA, LLC*,
    155 Cal. App. 4th 19 (2007)..............................................................................................17

*Johnson v. Nissan N. Am., Inc.*,
    272 F. Supp. 3d 1168 (N.D. Cal. 2017) ............................................................................13

*Keegan v. Am. Honda Motor Co., Inc.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012)................................................................................5

*Lipinski v. Martin J. Kelly Oldsmobile, Inc.*,
    325 Ill. App. 3d 1139 (2001) .......................................................................................8, 16

*Lohr v. Nissan N. Am., Inc.*,
    2017 WL 1037555 (W.D. Wash. Mar. 17, 2017)..............................................................24

*Loo v. Toyota Motor Sales, USA, Inc.*,
    2019 WL 7753448 (C.D. Cal. Dec. 20, 2019) ..................................................14, 15, 18, 23

*Loo v. Toyota Motor Sales, USA, Inc.*,
    2020 WL 4187918 (C.D. Cal. Apr. 10, 2020)...................................................................20

*Luong v. Subaru of America, Inc.*,
    2018 WL 2047646 (N.D. Cal. May 2, 2018) ................................................................6, 24

*MacDonald v. Ford Motor Company*,
    37 F. Supp. 3d 1087 (N.D. Cal. Mar. 31, 2014)...........................................................8, 11

*Majdipour v. Jaguar Land Rover N.A., LLC*,
    2013 WL 5574626 (D.N.J. Oct. 9, 2013)...........................................................................8

*Mandani v. Volkswagen Grp. of Am., Inc.*,
    2019 WL 652867 (N.D. Cal. Feb. 15, 2019).....................................................................10

*Marchante v. Sony Corp. of Am.*,
    801 F. Supp. 2d 1013 (S.D. Cal. 2011) ..............................................................................6

*Mayank v. Gen. Motors LLC*,
    370 F. Supp. 3d 772 (E.D. Mich. 2019) ......................................................................13, 14

*McCabe v. Daimler AG*,
    948 F. Supp. 2d 1347 (N.D. Ga. 2013) .............................................................................23

*McCarthy v. Toyota Motor Corp.*,
  2019 WL 3220579 (C.D. Cal. Apr. 9, 2019) ....................................................................... 9

*Mosqueda v. Am. Honda Motor Co., Inc.*,
  443 F. Supp. 3d 1115 (C.D. Cal. 2020) ........................................................................ 9, 10

*Muehlbauer v. Gen. Motors Corp.*,
  431 F. Supp. 2d 847 (N.D. Ill. 2006) ................................................................... 12, 15, 16

*Munning v. Gap, Inc.*,
  238 F. Supp. 3d 1195 (N.D. Cal. 2017) ............................................................................ 25

*Nelson v. Nissan N. Am., Inc.*,
  894 F. Supp. 2d 558 (D.N.J. 2012) .................................................................................. 18

*O'Connor v. Ford Motor Co.*,
  2020 WL 4569699 (N.D. Ill. Aug. 7, 2020) ............................................................... 15, 16

*Parrish v. Volkswagen Grp. of Am., Inc.*,
  463 F. Supp. 3d 1043 (C.D. Cal. 2020) .............................................................................. 9

*Perona v. Volkswagen of Am., Inc.*,
  292 Ill. App. 3d 59 (1997) ................................................................................................ 15

*Philips v. Ford Motor Co.*,
  2015 WL 4111448 (N.D. Cal. July 7, 2015) ............................................................... 12, 23

*Powell v. Subaru of Am., Inc.*,
  2020 WL 6886242 (D.N.J. Nov. 24, 2020) ....................................................................... 16

*Price v. Kawasaki Motors Corp. U.S.A.*,
  2011 WL 10948588 (C.D. Cal. Jan. 24, 2011) ................................................................. 10

*Robinson Helicopter Co. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) ...................................................................................................... 22

*Roe v. Ford Motor Co.*,
  2019 WL 3564589 (E.D. Mich. Aug. 6, 2019) ................................................................. 18

*Rossi v. Whirlpool Corp.*,
  2013 WL 5781673 (E.D. Cal. Oct. 25, 2013) ................................................................... 13

*Rutledge v. Hewlett-Packard Co.*,
  238 Cal. App. 4th 1164 (2015) ........................................................................................... 7

*Shannon v. Boise Cascade Corp.*,
  208 Ill. 2d 517 (2004) ...................................................................................................... 16

*Singletary v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*,
   9 F.3d 1236 (7th Cir. 1993)................................................................................24

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020)............................................................................25

*Stewart v. Electrolux Home Prod., In*c.,
   304 F. Supp. 3d 894 (E.D. Cal. 2018) ..............................................................12

*Stockinger v. Toyota Motor Sales USA Inc*,
   2017 WL 10574372 (C.D. Cal. July 7, 2017) ........................................18, 20, 22

*Tanner v. Ford Motor Co.*,
   424 F. Supp. 3d 666 (N.D. Cal. 2019) ..............................................................23

*Tartan Constr., LLC v. New Equip. Servs. Corp.*,
   2018 WL 4563079 (N.D. Ill. Sept. 24, 2018).....................................................23

*Tietsworth v. Sears, Roebuck & Co.*,
   2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ......................................................6

*Tokar v. Crestwood Imports, Inc.*,
   177 Ill. App. 3d 422, (1988)..............................................................................18

*Victorino v. FCA US LLC*,
   2016 WL 6441518 (S.D. Cal. Nov. 1, 2016) ........................................................9

*Villanueva v. Am. Honda Motor Co.*,
   2019 WL 8112467 (C.D. Cal. Oct. 10, 2019) ....................................................20

*Von Saher v. Norton Simon Museum*,
   592 F.3d 954 (9th Cir. 2010)............................................................................23

*Wildin v. FCA US LLC*,
   2018 WL 3032986 (S.D. Cal. June 19, 2018) ....................................................25

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008)..............................................................................5

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017)............................................................................6

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012)........................................................................6, 10

*Xavier v. Philip Morris USA Inc.*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) .......................................................19, 20

*Yetter v. Ford Motor Co.*,
    2019 WL 3254249 (N.D. Cal. July 19, 2019) .................................................21

*Zeiger v. WellPet LLC*,
    304 F. Supp. 3d 837 (N.D. Cal. 2018) ...........................................................20

**STATUTES**

15 U.S.C. § 1232 ......................................................................................................15

Cal. Civ. Code § 1559 .............................................................................................20

Cal. Civ. Code § 1791.1 ..........................................................................................19

Cal. Civ. Code § 1792 .............................................................................................19

Cal. Comm. Code § 2314 ........................................................................................19

Va. Code Ann. § 59.1-198 .......................................................................................14

Va. Code. § 8.01-229(D) .........................................................................................24

**RULES**

Fed. R. Civ. Pro. 8(d)(2).........................................................................................25

I.     INTRODUCTION

Defendant's American Honda Motor Company, Inc.'s ("Defendant" or "Honda") Motion to Dismiss ("MTD") Plaintiffs' First Amended Complaint ("FAC") ignores Plaintiffs' well-pled facts and misconstrues the applicable law. Plaintiffs adequately plead the existence of a safety defect of which Defendant was aware prior to sale. In fact, Honda expressly acknowledged that the Class Vehicles' Variable Timing Control ("VTC") Actuators were "defective" in a series of Technical Service Bulletins ("TSBs") dating back to 2011 but did nothing about it. The tell-tale rattling sound Honda trivializes as a "mild irritant" is actually the rattling of critical engine components (the timing chain and related parts) being subject to stress loads they were not designed to endure as a result of the VTC Defect, which can ultimately cause engine failure. For the reasons set forth below Defendant's motion should be denied in its entirety.

II.    STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Plaintiffs fraudulent omission claims are adequately pled.

2.     Whether Plaintiffs' implied warranty claims are adequately pled.

3.     Whether some of Plaintiffs' claims are time barred.

4.     Whether Plaintiffs' fraudulent omissions claims are barred by the economic loss doctrine.

5.     Whether Plaintiffs may seek injunctive and other equitable relief.

III.   STATEMENT OF RELEVANT FACTS

A.     Background to The VTC Defect and Why it Is a Safety Hazard

This action is brought on behalf of all persons in the United States who purchased or leased any 2012-2016 Honda CR-V or Accord, or 2012-2015 Honda Crosstour ("Class Vehicles"). To understand the critical role played by the allegedly defective component—known as the VTC Actuator—some background concerning the Class Vehicles' engine mechanics is necessary.

The Class Vehicle's four stroke gasoline engine creates power "by drawing air and gasoline into combustion chambers where they are compressed by the motion of a piston that is in turn connected to a crankshaft by connecting rods." FAC, ¶ 39. This pressure is controlled by the timing of intake valves that open and close at the appropriate time to release or build pressure. *Id.* The opening and closing of the intake valves is controlled by the camshaft, which is controlled by the crankshaft through a chain called the timing chain. *Id.* The timing chain connects to the camshaft and crankshaft by linking its teeth to sprockets on these parts. *Id.* If the timing chain is not kept tight enough then the intake valves may not open and close at the right time, which can lead to a malfunctioning engine. *Id.* The sprocket on the camshaft helps to ensure that the timing chain remains at the appropriate tension for the intake valves to open at the appropriate speed and time. *Id.*, ¶ 41.

The VTC Actuator is the timing chain sprocket on the camshaft, much like the sprocket on a ten speed. *Id.* However, in contrast to a typical sprocket that would necessarily turn the camshaft in unison with the crankshaft, the VTC Actuator adjusts the rotational position of the camshaft relative to the timing chain, crankshaft and pistons. The VTC Actuator is able to do this because it is comprised of an inner and outer section that move relative to one another based on oil pressure supplied by the engine. The FAC explains:

> As a result of the VTC Defect, the Class Vehicles' VTC Actuators malfunction for several seconds upon initial start-up while oil pressure is building up in the engine. This, in turn, causes the timing chain to tighten and slacken repeatedly when the vehicle is turned on, with the chain impacting the teeth of the camshaft sprocket (i.e., the VTC Actuator), crank sprocket, and "slapping" the polymer timing chain guides as it rattles around. On information and belief, this timing chain rattle is the sound heard by Plaintiffs and Class Members.

*Id.*, ¶ 41- 42.

> The FAC further explains that VTC Defect poses a safety hazard because:
> Whenever timing chain rattle occurs, ***all of these components, including the timing chain itself, are being subjected to impact loads for which they were not designed.*** After repeated exposure to these impact loads, the timing chain will stretch as the links and pins are worn and deformed, the polymer guides will wear, which increases the slack of the timing chain and lowers the spring force of the guides against the chain***. If the timing chain fails, the intake valves stop moving while the engine is turning, and the intake valves will collide with the pistons, destroying the engine and bringing the car to an instant stop. If part***

1

2

*of a timing chain guide fails, like the polymer portion separating from the steel*
*backing frame, the chain can "jump-time", which can also cause a collision*
*of the intake valves and pistons with the same instantly fatal result.*

3

(emphasis supplied).

4

**B.      Honda's Knowledge of the VTC Defect**

5

Honda has expressly acknowledged the VTC Defect in TSBs dating back to at least

6

2011. *Id.*, ¶ 51, and Ex. 2.  On October 21, 2011, well before *any* of the Plaintiffs purchased

7

their vehicles, Honda issued TSB10041669-7570 titled "Engine Rattles at Cold Start-Up"

8

applicable to 2008-2009 Honda Accord vehicles. *Id.*  The TSB states:

9

> **SYMPTOM**
> At cold start-up the engine rattles loudly for 2 seconds.

10

> **PROBABLE CAUSE**
> The variable valve timing control (VTC) actuator is defective.

11

> **CORRECTIVE ACTION**
> Use the repair procedure in this service bulletin to replace the VTC Actuator…

12

On October 6, 2012, Defendant released TSB 09-010, which expanded the vehicle

13

models and model years that have the same "defective" VTC Actuator (1430-R44-A01) to 2008

14

through 2012 Honda Accord and 2007 through 2012 CR-V vehicles. *See* FAC, ¶ 52 and Ex. 3.

15

The TSB directed dealers to replace the VTC Actuator if "[a]t a cold start-up the engine rattles

16

loudly for 2 seconds." *Id.*

17

Over three years later, in November 2015, Honda released ServiceNews Article

18

A15110E Version 1 titled "Engine Rattle at Cold Start in Cold Weather" for the same exact

19

problem as before.  *See* FAC, ¶ 53 and Ex. 4.  This article expanded the number and type of

20

vehicles impacted by the VTC Defect a second time to: (1) 2008-2012 Honda Accord vehicles,

21

(2) 2012-2015 Honda Crosstour vehicles; and (3) 2012-2014 Honda CR-V vehicles. *Id.*  Like

22

the previous TSBs, the article explains that if the engine rattles at cold startup for 1 to 2 seconds

23

"[c]hances are the VTC Actuator is the culprit." *Id.*   However, Honda went on to caution

24

"simply replacing the VTC Actuator using current parts stock ***won't work***" and that it hoped to

25

have counter measure parts the following year.  *Id.* (emphasis supplied).

26

In February of 2016 Honda issued a third TSB (16-012), which described the same

27

rattling problem upon cold start-up as the previous TSBs and expanded the Honda vehicles

28

1   with the defective VTC Actuator a third time to: 2013-2014 CR-Vs and 2013-2015 Crosstours.

2   FAC, ¶ 54 and Ex. 5.   The TSB identified the same *"Failed Part Number"* (i.e. the VTC

3   Actuator) as the previous two TSBs and recommended the part be replaced. *Id.*

4        About two years later in January 2018, Honda released a ServiceNews Article titled

5   "Engine Rattles at Startup", which expanded the Honda vehicles impacted by the problem again

6   to: 2013-2016 Accords and 2015-2016 CR-Vs.   FAC, ¶ 55 and Ex.6.   The article advises that

7   if the engine rattles at startup for about 1 to 3 seconds "What's happening is the lock pin inside

8   the VTC Actuator isn't holding the actuator properly.   This lets the vane turn within the housing,

9   causing a short rattle at startup."   Honda then cautions that there are no countermeasures "so

10  **do not** replace the VTC Actuator at this time.   It's very unlikely that doing so will fix this

11  concern."   *Id*. (emphasis in original).   Although Honda has repeatedly acknowledged in its

12  TSBs and ServiceNews Articles that the VTC Actuator is "defective," it has failed to offer a

13  non-defective replacement part. *Id.*, ¶ 43.

14        **C.        Plaintiffs' Experiences**

15        All Plaintiffs own vehicles that suffer from the VTC Defect and purchased them *after*

16  Honda became aware of the Defect.   *See* FAC, ¶¶ 11, 14, 17, 23, 27, 44-56.   All Plaintiffs

17  experienced a loud rattling noise when starting the engine and Ms. Quackenbush, Ms. Feeney,

18  and Ms. Prasse all paid to have their VTC Actuator replaced.   FAC, ¶¶ 12 (Quackenbush paid

19  $788.23), 20 (Pellettieri paid $674.27), 28 (Prasse paid $922.55).   Ms. Pellettieri was told by at

20  least one Honda dealer that if the issue was not fixed it could damage internal timing

21  components and lead to engine failure.   *Id*., ¶ 21.

22  **IV.    ARGUMENT**

23        A plaintiff must allege "enough facts to state a claim to relief that is plausible on its

24  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").   A claim has "facial

25  plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable

26  inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

27  662, 678 (2009).   In ruling on a motion to dismiss, the complaint's allegations must be "taken

28

as true and construed in the light most favorable to" the plaintiff. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008).

## A.   THE CALIFORNIA FRAUD CLAIMS ARE ADEQUATELY PLED

Failure to disclose a material fact may constitute actionable fraud.   Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 255 (2011).   Defendant had a duty to disclose the VTC Defect, and its failure to do so constitutes fraud under the CLRA, UCL, and the common law.

### 1.   Defendant Failed To Disclose Material Facts

An unreasonable safety risk is per se material.   See Keegan v. Am. Honda Motor Co., Inc., 838 F. Supp. 2d 929, 944 (C.D. Cal. 2012).   Defendant claims that Plaintiffs fail to explain the "nexus" between the VTC Defect and safety, but the truth is that the FAC describes the VTC Defect and its impact on safety with a level of technical detail that far surpasses what is required at the pleading stage.   As the FAC explains, the VTC actuator is a critical internal engine component—the timing chain sprocket attached to the camshaft, which itself is responsible for opening and closing the engine's pistons.   The Defect causes the VTC Actuator to malfunction for several seconds on initial start-up while oil pressure builds in the engine.   The FAC further explains:

> This, in turn, causes the timing chain to tighten and slacken repeatedly when the vehicle is turned on, with the chain impacting the teeth of the camshaft sprocket (i.e., the VTC Actuator), crank sprocket, and "slapping" the polymer timing chain guides as it rattles around. Whenever timing chain rattle occurs, all of these components, including the timing chain itself, are being subjected to impact loads for which they were not designed.   After repeated exposure to these impact loads, the timing chain will stretch as the links and pins are worn and deformed, the polymer guides will wear, which increases the slack of the timing chain and lowers the spring force of the guides against the chain.

FAC ¶ 42.   The FAC  goes on to explain, again in technical detail, how the failure of the timing chain and related components necessarily will lead to engine failure if not addressed. Id.   The plausibility of Plaintiffs' allegations is further supported by real world examples of consumers who have experienced damage to timing components (i.e., stretched timing chains).   FAC ¶¶ 4-7 (reproducing multiple consumer complaints of stretched timing chain

1  due to VTC Defect).   Honda would have the Court believe that the VTC Defect results only

2  in a harmless fleeting noise, but Plaintiffs' allegations and consumer experiences tell a

3  different story.   Honda's actions in repeatedly recommending replacement of defective

4  Actuators at considerable cost also belie its claim that the Defect is harmless.

5       The VTC Defect is at least as severe as defects in other cases. 1  Moreover, Plaintiffs'

6  allegations go above and beyond the specificity required, especially because they are "not

7  required to plead the mechanical details of an alleged defect in order to state a claim" at the

8  pleading stage.  Cholakyan v. Mercedes-Benz USA, LLC, 796 F. Supp. 2d 1220, 1237 n.60

9  (C.D. Cal 2011); Donlen v. Ford Motor Co., 217 Cal. App. 4th 138, 149 (2003).

10      Defendant's authority is distinguishable.  In Wilson v. Hewlett-Packard Co., 668 F.3d

11  1136, 1144 (9th Cir. 2012), Plaintiffs described how the "normal use of Laptops … causes

12  the connection between the power jack and the motherboard to weaken, resulting in loss of

13  power… but not how the loss of connection between the power jack and motherboard causes

14  Laptops to ignite."  In other words, Plaintiffs failed to show how a loss of power could lead

15  to ignition.  Id. at 1144-45.  Here, Plaintiffs have made all the necessary links between the

16  VTC Defect and engine failure.  Plaintiffs explain how the VTC Defect can cause the chain

17  to stretch over time, which could lead to its failure and engine failure.  FAC, ¶ 42.  Williams

18  v. Yamaha Motor Co., 851 F.3d 1015, 1028-1029 (9th Cir. 2017) is distinguishable because

19  there, unlike here, the defect merely accelerated a normal wear and tear process. [2]

20  ───────────────────

21  [1] *Bryde* , 2016 WL 6804584, at *12 (risk airbag may deploy without allegations that this
    occurred material); *Falk,* 496 F. Supp. 2d at *1096*  (malfunctioning speedometer), *Ehrlich*,

22  801 F. Supp. 2d at 918 (windshields susceptible to cracking), *Luong*, 2018 WL 2047646, at
    *5 (same); *Ho*, 931 F. Supp. 2d at 991 (headlights prone to condensation or moisture); *In re*

23  *Porsche Cars N.A., Inc*., 880 F. Supp. 2d 801, 828 (S.D. Oh. July 19, 2012) (plastic coolant
    tubes that crack, leak, or otherwise fail); *Cirulli v. Hyundai Motor Co*., 2009 WL 5788762,

24  *3 (C.D. Cal. June 12, 2009) (sub-frames susceptible to corrosion).
    [2] *Marchante v. Sony Corp. of Am*., 801 F. Supp. 2d 1013, 1018 (S.D. Cal. 2011) and

25  *Tietsworth v. Sears, Roebuck & Co*., 2009 WL 3320486, at *5 (N.D. Cal. Oct. 13, 2009) are
    even further afield.  These cases do not involve defective vehicles and the products therefore

26  have a different "reliability" standard.  These cases also erroneously focused their analysis of
    the defect on the lack of any physical injuries, but actual injury is not required to plead a

27  safety defect.  *See e.g.*, *Falco v. Nissan N. Am. Inc*., 2013 WL 5575065, at *5 (C.D. Cal. Oct.

28  10, 2013) (citing cases).

The VTC Defect is also material because it is a "physical defect that affects the central functioning of the product."  MTD at 11:23-27. In *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 860 (9th Cir. 2018), the Ninth Circuit explained that the "safety hazard pleading requirement is not necessary in all omission cases" but "where the challenged omission does not concern a central functional defect, the plaintiff may still have to plead a safety hazard to establish that the defendant had a duty to disclose."  *Hodsdon*, 891 F.3d at 864.  Plaintiffs have described how the vehicles' engines function and how the Defect can cause engines not to perform optimally.  *See* Sec III. A-B., *supra*.  An operating engine is essential to a vehicles' ability to function therefore, the Defect is material.[3]

### 2.    Defendant Had A Duty To Disclose the VTC Defect

A duty to disclose material facts may arise:
(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094-96 (N.D. Cal. 2007).  Plaintiffs allege (2) [exclusive knowledge] and (3) [active concealment].

### A)    Defendant Had Exclusive Knowledge Of The VTC Defect

As explained above, for years Honda has issued TSBs and SerivceNews articles quietly to its dealers that acknowledge the Class Vehicles have "defective" VTC Actuators and that Honda does not have a non-defective replacement part.  FAC, ¶¶ 51-55.  Honda began issuing these TSBs as in October of 2011, ***well before any of Plaintiffs' purchases***. *Id.*, ¶ 51, and Ex. 2.  This TSB, like the ones that follow it, describe the exact symptoms of the VTC Defect experienced by Plaintiffs "[a]t cold start-up the engine rattles loudly for 2 seconds" and yet, later TSBs and ServiceNews articles make clear that "current parts stock

---

[3] *See Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1175 (2015) (a defect in the inverters of computers that impacted the computer's display monitor was a physical defect impacting the core functionality); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 258, (2011) (duty to disclose because "the floppy disk was central to the function of a computer as a computer.").

won't work" to fix the defect. *Id.*, ¶¶ 51-53. This is because all the TSBs reference the same VTC Actuator part number and there is no non-defective replacement part. *Id.*, ¶¶ 51-55.

A manufacturer's creation of TSBs regarding an alleged defect has been held to evidence prior knowledge even when prepared years after the plaintiffs' purchases (not the case here).[4] This is because preparation of a TSB is motivated by prior events, namely, customer or repair shop feedback. Once feedback is received, it must be processed. Only then, along with analyzing internal testing and data, would the TSB be drafted. A TSB acknowledging a defect can only come after knowledge of the defect, therefore TSBs related to a defect supports allegations that the manufacturer gained prior knowledge through pre-production testing, failure analysis and the like.[5]

Honda argues that Plaintiffs erroneously assign legal meaning to the TSB's designation of the VTC actuator as "defective" based on the holding in *Am. Honda Motor Co. v. Super. Ct.*, 199 Cal.App. 4th 1367, 1378, in which the court rejected the plaintiffs' argument that a TSB and internal Honda communication constituted "substantial evidence" of a design defect in the context of class certification. However, TSBs are commonly relied upon at the pleading stage to show presale knowledge. *See* n.6, *supra*. Plaintiffs further note that the TSBs here affirmatively state that the component in question is "defective." Plaintiffs submit that this admission against interest made prior to the Plaintiffs'

---

[4] *See e.g.*, *Falco* 2013 WL5575065, at*5-*6 (2007 TSB sufficient to show knowledge in 2005); *See Ho*, 931 F. Supp. 2d at 991, 998 (TSB's regarding defect (which were issued after some or most of the plaintiffs had purchased their cars) sufficient to evidence prior knowledge); *Majdipour v. Jaguar Land Rover N.A., LLC*, 2013 WL 5574626, at *18 (D.N.J. Oct. 9, 2013) (TSB not only supported existence of defect at the pleading stage, but also internal knowledge of defect based on internal testing and data before its issuance to dealers); *MacDonald v. Ford Motor Company*, 37 F. Supp. 3d 1087, 1093 (N.D. Cal. Mar. 31, 2014) (drawing inference of Ford's knowledge of a defect from three TSBs); *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 1147–48 (2001) (TSB sufficient to allege GM's prior knowledge)

[5] Defendant also argues that Plaintiffs' consumer complaints do not establish Honda's presale knowledge. MTD at 14:1-12. Plaintiffs do not ask the Court to infer Honda's presale knowledge from complaints posted on NHTSA's website or elsewhere on the internet. The FAC specifically states they are reproduced to 'demonstrate the VTC Defect is widespread and dangerous' FAC, ¶ 58.

---

Plfs' Opp. to Def's Motion to Dismiss Amended Complaint
Case No. 3:20-cv-05599-WHA                                                    8

1    purchases will ultimately be admissible as evidence of a defect.  But that bridge need not be

2    crossed now.   At the pleading stage Plaintiffs need only allege facts that plausibly infer

3    Defendant's presale *knowledge*; Honda cites no authority that may not be used for this

4    purpose.

5         Honda also argues that the TSBs cited by Plaintiffs (FAC, Exs. 2, 3 and 5) can't

6    demonstrate Honda's knowledge as to Ms. Suelen's 2015 CR-V because those TSBs pertain

7    to other Honda vehicles.  This ignores Plaintiffs' allegations that the VTC Actuator is "the

8    same or substantially similar" in all vehicles, which are again supported by a detailed

9    technical discussion lending further plausibility to the alleged facts. FAC, ¶ 43.  From about

10   2007 through 2016, "the VTC Actuator has consisted of a special two-piece sprocket with

11   inner and outer sections that move relative to each other to adjust the rotational position of

12   the camshaft."  *Id.*  This basic design has not changed throughout this time period, even

13   though "Honda repeatedly acknowledged it did not have a solution for the VTC Defect."  *Id.*

14   These allegations are sufficient.  Moreover, many courts have found that TSBs describing the

15   same problem in other models are evidence of prior knowledge in vehicles with similar parts.[6]

16        Defendant attempts to shift the Court's focus from the TSBs, by arguing that

17   Plaintiffs' allegations that Defendant acquired presale knowledge through "pre-production

18   activities including testing and data collection and analysis efforts" are purely conclusory

19   (MTD at 14:13-15), but courts routinely find such allegations sufficient.[7]  *Mosqueda v. Am.*

20   _____

21   [6] *Hardt v. Chrysler Grp. LLC*, 2015 WL 12683963, at *5–6 (C.D. Cal. Mar. 16, 2015) (TSBs
     concerning transmission issue in Dodge Journey vehicles evidenced knowledge of defect in

22   Dodge Dart where plaintiff alleged that vehicles had the same transmission and experienced
     the same or very similar problems); *McCarthy v. Toyota Motor Corp.*, 2019 WL 3220579, at

23   *4–5 (C.D. Cal. Apr. 9, 2019) (allegations of inverter defect in Highlander/RX400 hybrids
     evidenced prior knowledge of defect in 2010-2014 Priuses alleged to have same component);

24   *Victorino v. FCA US LLC*, 2016 WL 6441518, at *9 (S.D. Cal. Nov. 1, 2016) (TSBs of
     transmission problem in 2011 Dodge Dart vehicles were evidence of prior knowledge in 2013

25   -2016 Dodge Dart vehicles with same transmission); *see also Parrish v. Volkswagen Grp. of
     Am., Inc.*, 463 F. Supp. 3d 1043, 1053 (C.D. Cal. 2020) (customer complaints of similar

26   problems in VW Tiguan's transmission were sufficient to establish knowledge of dame defect
     in VW Jetta with the same transmission).

27   [7] *See Falk*, 496 F. Supp. 2d at 1096-97 (finding allegations that "'GM had access to the

28   aggregate data from its dealers[,] only GM had access to pre-release testing data[, and] only

*Honda Motor Co., Inc*., 443 F. Supp. 3d 1115, 1132 (C.D. Cal. 2020) also does not require Plaintiffs to allege more as Defendant contends.  *Mosqueda* did not conclude Plaintiffs' testing allegations alone established knowledge, rather it found that the testing allegations in combination with "the communications from Honda to its dealers … support an inference of Honda's knowledge." 443 F. Supp. 3d at 1132.  *Mosqueda* distinguished itself from *Wilson*, 668 F.3d 1136, which found allegations of test data and customer complaints *alone* insufficient to establish knowledge.  443 F. Supp. 3d at 1131.[8]  As in *Mosqueda*, Plaintiffs' reliance on TSBs in addition to its allegations of pre-sale testing are sufficient to impute pre-sale knowledge.

### 3.    Defendant Actively Concealed Material Facts

Defendant also actively concealed the VTC Defect by: (1) issuing TSBs only to its dealers, rather than to all vehicle owners and lessees; (2) issuing TSBs that proscribed a fix that it knew would not be effective (FAC,  ¶¶ 51-52); (3) issuing TSBs that misleadingly suggested a non-defective VTC actuator would soon, or ever, be available (Id., ¶¶ 53); (4) failing to tell consumers prior to purchase or at the time of repair that the their vehicles were defective; and (5) failing to recall the vehicles.   Courts have found similar allegations sufficient.[9]

---

GM had access to the numerous complaints from its customers'" sufficient); *Price v. Kawasaki Motors Corp. U.S.A*., 2011 WL 10948588, *5 (C.D. Cal. Jan. 24, 2011) (allegations that "KMC had knowledge of the defect for at 'least two or three years' as a result of internal research, receipt of consumer complaints, knowledge of lawsuits, and information from dealers. " demonstrated exclusive knowledge) "); *Mui Ho*, 931 F. Supp. 2d at 998 (finding allegations that "Defendants had non-public, internal data about the Class Vehicles' headlamp problems, including pre-release testing data, early consumer complaints about the defect to Defendants' dealers … dealership repair orders, testing conducted in response to those complaints, and other internal sources" sufficient).

[8] Defendant's remaining authority is distinguishable.  *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *16-*17 (C.D. Cal. Oct. 3, 2014) (pre-sale knowledge not established where Plaintiff did not point to any TSBs); *Mandani v. Volkswagen Grp. of Am., Inc*., 2019 WL 652867, at *7 (N.D. Cal. Feb. 15, 2019) (knowledge insufficiently alleged where Plaintiff did not cite any pre-sale TSBs).

[9] *See e.g, In re MyFord Touch Consumer Litig*., 46 F. Supp. 3d 936, 961 (N.D. Cal. 2014) (active concealment alleged where defendant "never shared the existence of the TSBs with Plaintiffs when they took their cars in for service" and did not admit the defect could not be fixed); *Mui Ho*, 931 F. Supp. 2d at 999 (active concealment alleged where defendant repaired

1

### 4.     The FAC Satisfies Rule 9(b)

2          Honda claims that Plaintiffs fail to plead their fraudulent omissions claims under Rule

3    9(b) because they have not "describe[d] the content of the omission and where the omitted

4    information should or could have been revealed, as well as provide[d] representative samples

5    of advertisements, offers, or other representations that plaintiff relied on to make her purchase

6    and that failed to include the allegedly omitted information."  MTD at 6:16-21.  However,

7    numerous courts have recognized that "claims based on an omission 'can succeed without the

8    same level of specificity required by a normal fraud claim.'"  *Bryde v. General Motors, LLC,*

9    2016 WL 6804584, at *13 (N.D. Cal. Nov. 11, 2016) (citation omitted).  This is "because 'a

10   plaintiff cannot plead either the specific time of [an] omission or the place, as he is not

11   alleging an act, but a failure to act.'"  *Asghari v. Volkswagen Grp. of Am., Inc*., 42 F. Supp.

12   3d 1306, 1325 (C.D. Cal. 2013) (citation omitted).

13          Plaintiffs have adequately alleged the who -  Honda and/or its dealers acting as

14   Honda's agents (FAC, ¶¶ 1, 30-32), the what – the VTC Defect, which is defined in detail

15   (*id*., ¶¶ 38-43), the when – when Plaintiffs' researched their vehicles, including by viewing

16   the Monroney or sales stickers on them and spoke to the sales representative about the

17   vehicles (*id*., ¶¶ 11,14, 17, 23, 27), where the fraudulent conduct occurred - the various

18   channels through which Defendant sold its vehicles including its dealers (*id*., ¶¶ 33, 44-56),

19   and the how – by failing to disclose the VTC Defect (id.).  Numerous courts have found

20   allegations such as Plaintiffs' adequate.  *MacDonald*, 37 F. Supp. 3d at 1096 ("Plaintiffs

21   adequately allege the 'who what when and how,' given the inherent limitations of an omission

22   claim. In short, the 'who' is Ford, the 'what' is its knowledge of a defect, the 'when' is prior

23   to the sale of Class Vehicles, and the 'where' is the various channels of information through

24   which Ford sold Class Vehicles"); *Hardt*, 2015 WL 12683963, at *8 ("Plaintiffs have

25   adequately pleaded that "the 'who' is [Chrysler], the 'what' is its knowledge of a defect, the

26
───────────────────────
headlamps only temporarily or replaced them with other defective parts); *Falk v. Gen. Motors*
27   *Corp*., 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007) (active concealment alleged where GM
never "made any attempt to notify other customers or effect a recall" and replaced defective
28   parts with equally defective parts).

1   'when' is prior to the sale of Class Vehicles[,] the 'where' is the various channels ... through

2   which [Chrysler] sold Class Vehicles," including its dealerships, and the "how" is through its

3   failure to disclose the alleged Defect"); *Bryde*, 2016 WL 6804584, at *14 (applying a similar

4   who, what, when, where, how analysis and holding the plaintiffs' fraud claims satisfied Rule

5   9b); *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 869–70 (N.D. Ill. 2006) (finding

6   who, what, when, where of Illinois claim satisfied); *Mui Ho v. Toyota Motor Corp*, 931 F.

7   Supp. 2d 987, 999 (N.D. Cal. 2013) (fraud by omission claim adequately alleged where

8   plaintiff pointed to omission of material safety defect that was not disclosed by dealer at

9   purchase);

10       Defendant argues *Clark v. Hershey Co.*, 2019 WL 913603, at *3 (N.D. Cal. Feb. 25,

11   2019) requires Plaintiffs to allege the "content of what they supposedly should have been

12   told" and "provide represent samples of advertisements or other representations on which

13   they relied" but *Clark* stands for no such standard.  In *Clark*, Plaintiffs brought claims alleging

14   Defendant affirmatively misrepresented (rather than omitted) its products had no artificial

15   flavors, but failed to submit any misleading statements.  *Id.*  *Stewart v. Electrolux Home

16   Prod., In*c., 304 F. Supp. 3d 894, 907 (E.D. Cal. 2018) ill-suited comparison for this case,

17   because there plaintiffs' claims failed because they did not define the defect in a consistent

18   manner, whereas here Plaintiffs' have explained the VTC Defect in detail.

19             **5.**      **A Direct Transaction Is Not Required**

20       A direct transaction between Defendant and Plaintiffs is not required to allege a

21   consumer protection or fraud claim.  Both Plaintiffs have alleged they purchased their

22   vehicles from authorized dealers, these allegations are sufficient.  *Philips v. Ford Motor Co.*,

23   2015 WL 4111448, at *14 (N.D. Cal. July 7, 2015) ("Allegations that vehicles were purchased

24   from an authorized dealership are typically sufficient to state a claim against the vehicle

25   manufacturer under the CLRA.") (citing *Chamberlin v. Ford Motor Co.*, 2003 WL 25751413

26   at *8 (N.D. Cal. Aug. 6, 2013); *Hamm v. Mercedes-Benz USA*, LLC, 2019 WL 4751911, at

27   *5 (N.D. Cal. Sept. 30, 2019) ("[P]laintiffs who purchased used cars, or who purchased cars

28

1   from dealerships rather than directly from the manufacturer have standing to bring CLRA

2   claims against manufacturers.") (citation omitted); *see also Johnson v. Nissan N. Am., Inc.*,

3   272 F. Supp. 3d 1168, 1183 (N.D. Cal. 2017) (claim adequately alleged even when plaintiff

4   purchased a Nissan vehicle from CarMax); *Rossi v. Whirlpool Corp.*, 2013 WL 5781673, at

5   *10 (E.D. Cal. Oct. 25, 2013) ("[T]the CLRA's protection extends to the manufacturer as

6   well, regardless of whether the consumer dealt directly with the manufacturer.").

7                **6.        The UCL Claims Are Adequately Pled**

8        Plaintiffs' UCL "unlawful" claims are adequate because their CLRA, fraud, and

9   implied warranty claims are adequate.  *See* Sec IV. A. *supra*, Sec. IV. D. *infra*; *Enea v.*

10  *Mercedes-Benz USA LLC,* 2019 WL 402315 at *7 (N.D. Cal. Jan. 31, 2019).  Defendant's

11  conduct was also "unfair."   A business practices is 'unfair' under the UCL if: "(1) the

12  consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits

13  to consumers or competition; and (3) the injury could not reasonably have been avoided by

14  consumers themselves"  *In re Ford Tailgate Litigation*, 2015 WL 7571772 at *12 (citation

15  omitted).  Plaintiffs allege Honda sold vehicles with a known safety defect to meet its own

16  internal schedules and revenue goals, and that the utility of this conduct is greatly outweighed

17  by the potential harm to consumers.  FAC ¶ 99. Taken as true, these allegations establish

18  unfair conduct.[10]

19               **B.        THE VIRGINIA FRAUD CLAIMS ARE ADEQUATELY PLED**

20        Ms. Prasse's common law fraud and Virginia Consumer Protection Act ("VCPA")

21  claims are adequately pled for the same reasons Plaintiffs' California claims are adequately

22  pled.  Like California, Virginia recognizes that a duty to disclose arises when "the fact is

23  material and the one concealing has superior knowledge and knows the other is acting upon

24  the assumption that the fact does not exist." *Mayank v. Gen. Motors LLC*, 370 F. Supp. 3d

25  772, 796 (E.D. Mich. 2019) (citation omitted).  An omission is material, "[if] a reasonable

26

27  [10] *Clemens v. DaimlerChrysler Corp*, 534 F.3d 1017 (9th Cir. 2008) is distinguishable
    because in that case Plaintiff had not sufficiently alleged a violation of the CLRA or
28  fraudulent omissions claims.

1    man would attach importance to [it] in determining his choice of action in the transaction"

2    *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices &*

3    *Prod. Liab. Litig.*, 2017 WL 2646286, at *8 (E.D. Va. June 20, 2017).

4    　　　Plaintiffs have alleged Defendant knew about a material safety defect prior to selling

5    Ms. Prasse her vehicle, and Ms. Prasse would not have purchased her vehicle had she known

6    about the Defect.  Sec. III, and IV. A. *supra.*  Therefore, Defendant had a duty to disclose the

7    Defect.  *Matanky*, 370 F. Supp. 3d at 796 (citation omitted); *Loo v. Toyota Motor Sales, USA,*

8    *Inc.*, 2019 WL 7753448, at *10 (C.D. Cal. Dec. 20, 2019).

9    　　　Ms. Prasse does not need to allege she interacted with Honda *directly* to establish that

10   Honda had reason to know she was acting on its omission.  Courts have squarely rejected this

11   argument.  *Alexander v. Se. Wholesale Corp.*, 978 F. Supp. 2d 615, 623 (E.D. Va. 2013) ("A

12   complaint must merely allege the defendant knew or had reason to know that the plaintiff

13   would rely on the [omission].").  Nor does the VCPA require Defendant to have sold Plaintiff

14   her vehicle for the transaction to be covered under the statute.  *See e.g*, *Alexander*, 978 F.

15   Supp. 2d at 622 ("[A] direct sale to a consumer is not required for the transaction to be covered

16   by the VCPA."); *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *39

17   (same).  Indeed, the VCPA expressly defines a "supplier" as "a manufacturer, distributor, or

18   licensor who advertises and sells, leases, or licenses goods or services to be resold, leased, or

19   sublicensed by other persons in consumer transactions." Va. Code Ann. § 59.1-198.  The fact

20   that Ms. Prasse purchased from a Hyundai dealer is, therefore, not material—particularly in

21   light of her pre-purchase investigation.

22   　　　Honda admits that the "touchstone" of reasonable reliance is prudent investigation.

23   MTD at 19:1-2.  It is hard to imagine a consumer more thoroughly and conscientiously

24   researching a vehicle purchase.  Ms. Prasse "extensively researched the CR-V and its

25   specifications (i.e., features, engine, powertrain) on the Internet including on Honda's

26   website." FAC, ¶ 27.  Ms. Prasse also went to multiple *Honda* dealerships, where she test

27   drove CR-V vehicles and spoke with a salesperson named Perlita Roberts about them.  *Id.*

28

1    Despite this, Honda argues that Ms. Prasse made only a "partial" inquiry because she did not

2    discover the systemic defect that underlies the FAC.  MTD at 19:5-10.  This argument is

3    baseless.  The FAC clearly alleges, Honda's TSBs were issued to its dealers only.  Moreover,

4    a layperson such as Ms. Prasse, with no special automotive expertise, could not be expected

5    to understand the full nature and scope of the VTC Defect, even if she had possession of the

6    technical information that underlies the FAC (which she did not).  *Loo*, 2019 WL 7753448,

7    at *12.

8            **C.      THE ILLINOIS FRAUD CLAIMS ARE ADEQUATELY PLED**

9            A claim under the Illinois Consumer Fraud Act ("ICFA") lies where there is "an

10   omission or concealment of a material fact in the conduct of trade or commerce."  *Perona v.*

11   *Volkswagen of Am., Inc*., 292 Ill. App. 3d 59, 67 (1997) (citing *Connick v. Suzuki Motor Co*.,

12   174 Ill. 2d 504).  A fact is material when a buyer would have acted differently knowing the

13   information.  *Id.*  A claim under IFCA does not require allegations of a duty to disclose.

14   *Muehlbauer*, 431 F. Supp. 2d at 868.  Plaintiffs have alleged Honda's omission of a known

15   safety Defect which directly impacted their purchasing decision.  FAC, ¶¶ 17,23, 44-55. These

16   allegations satisfy the ICFA.

17           Defendant's primary challenge to Plaintiffs' ICFA claim is they have not alleged they

18   received "directly or indirectly, communication or advertising from defendant."  MTD at 16:26-

19   17:1.  This argument is factually and legally wrong.  Plaintiffs *have* alleged they viewed

20   materials from Honda[11]. Ms. Pellettieri alleges that prior to purchase she researched the CR-V

21   on Honda's website, and that she viewed the Monroney sticker posted on her vehicle.  FAC, ¶¶

22   17, 23.  Monroney stickers are placed by the Manufacturer (*i.e.* Honda) prior to delivery to a

23   dealer.  15 U.S.C. § 1232.  Honda could have placed an advisement regarding the VTC Defect

24   on its website and/or on all affected vehicles, but chose not to.  Additionally, Illinois recognizes

25   plaintiffs may bring a claim when they have been indirectly deceived by an intermediary who

26

27   [11]  *O'Connor v. Ford Motor Co*., 2020 WL 4569699, at *8 (N.D. Ill. Aug. 7, 2020) is
     distinguishable because in that case Plaintiff failed to allege he did *any* research prior to
28   purchasing his vehicle or viewed *any* statements about the vehicles.

was deceived by a Defendant.  *De Bouse v. Bayer*, 235 Ill. 2d 544, 556 (2009) (citing *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517, 526 (2004)).  Both Plaintiffs purchased from authorized Honda dealers.  Honda issued TSBs that only directed its dealers to replace the VTC Actuator *if* there was a rattle at cold-start up, even though it knew all the VTC Actuators were "defective" and there was no replacement part.  FAC, ¶¶ 44-56 and Ex.'s 2-6.  Honda's TSBs said nothing about the potential impact of the VTC Defect.  Had Honda's dealers know the truth about the Defect and disclosed it to Plaintiffs at the time of purchase, they would not have been injured.  Through their ignorance, they effectively passed along Honda's omissions.  Plaintiffs' claims are closely akin to many others that courts have found sufficient.[12]

Plaintiffs have also shown Honda's conduct was "unfair" under ICFA.  Plaintiffs allege that Defendant failed to disclose a known safety defect and as a result Plaintiffs "suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicle."  *See e.g.*, FAC, ¶¶ 2, 10, 23, 25, 27.  Plaintiffs' allegations are similar to those in *Powell v. Subaru of Am., Inc.*, 2020 WL 6886242, at *27 (D.N.J. Nov. 24, 2020) (failing to disclose a safety defect was "unfair" because it unjustly enriched Subaru).[13]

Plaintiffs' fraudulent omission claims are also adequately pled.  The prime difference between Illinois ICFA and fraudulent omissions claim is that the latter requires plaintiff allege a duty to disclose.  Defendant similarly argues the fact that Plaintiffs purchased from a dealer bars this claim.  But a duty to disclose arises where the defendant is "in a position of influence and superiority over plaintiff" which can arise by reason of "friendship, agency, or experience."

---

[12] *Lipinski*, 325 Ill. App. at 1139 (2001) (ICFA claim adequately pled); *Connick*, 174 Ill. 2d at 504–05 (allegations that Suzuki was aware of the Samurai's tendency to roll over and did not disclose it sufficient to state an ICFA claim); *Muehlbauer*, 431 F. Supp. at 869–70 (plaintiffs allegations "that defendant failed to disclose that the vehicles were defective, and defendant became aware of the defect" prior to plaintiff's purchase sufficient to plead an ICFA claim) *In re Ford* 2008 WL 4126264, at *27 (ICFA claim adequately alleged where Ford deceived plaintiff by withholding information about the safety of certain vans).

[13]  Defendant cites *O'Connor*, 2020 WL 4569699 for the proposition that an unfair claim cannot be predicated upon the same conduct as a deceptive claim, but that is an overstatement of its holding.  In *O'Connor*, the court found plaintiff's ICFA claim for deceptive conduct failed to meet the 9(b) pleading standard and, since plaintiff's unfair IFCA claim was predicated on the same conduct, it also failed.

1   *Connick v. Suzuki Motor Co*., 174 Ill. 2d 482 (1996).  Plaintiffs have alleged that Honda gained

2   superior knowledge of the VTC Defect through its pre-release process of designing,

3   manufacturing, engineering and testing the vehicles.  FAC, ¶¶ 45-47.  This knowledge is

4   evidenced by Honda TSBs and New Articles documenting the Defect.  Honda used this position

5   of superiority and experience to deceive dealers and consumers alike as to the true nature of the

6   VTC Defect, all for the purpose of advancing its bottom line.  FAC, ¶¶ 99, 120. This is an

7   actionable fraudulent omission.  *See In re Volkswagen Timing Chain Prod. Liab*. Litig., 2017

8   WL 1902160, at *20 (D.N.J. May 8, 2017) (duty to disclose existed under Illinois fraud claim

9   where Defendant had superior knowledge of a safety defect); *In re Chrysler-Dodge-Jeep*

10  *Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig*., 295 F. Supp. 3d 927, 1010 (N.D. Cal.

11  2018) (finding fraudulent concealment claims under Illinois law "can be viable even when there

12  is arm's-length transaction between the parties.").  Plaintiffs note that their allegations are

13  distinguishable from those in *Connick*, 174 Ill. 2d 482 where Plaintiffs only alleged contacts

14  with Suzuki's authorized dealers and did not present any evidence of the defendant's superior

15  knowledge of the defect that lie at the heart of the case.

16      **D.      THE IMPLIED WARRANTY CLAIMS ARE ADEQUATELY PLED**

17          **1.      Plaintiffs' Allege Their Vehicles Are Unmerchantable**

18      All three states recognize that a vehicle need not be inoperable for it to be

19  unmerchantable.  *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007) (vehicle

20  that smells, lurches, clanks, and emits smoke is not fit for its intended purpose even though it

21  can provide transportation from point A to B); *Hubbard v. Dresser, Inc*., 271 Va. 117, 124

22  (2006) (Merchantable goods are those that "would pass without objection in the trade under the

23  contract description' or which 'are fit for the ordinary purposes for which such goods are

24  used.'"); *Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc*., 342 Ill. App. 3d 150, 159

25  (2003) ("[W]ith regard to automobiles, '[f]itness for the ordinary purpose of driving implies

26  that the vehicle should be in a safe condition and substantially free of defects.'").  In each state,

27  "whether a product runs afoul of the implied warranty of merchantability is a question of fact.'"

28

*Stockinger v. Toyota Motor Sales USA Inc*, 2017 WL 10574372, at 121 (C.D. Cal. July 7, 2017) (citation omitted) (applying California and Virginia law); *Loo*, 2019 WL 7753448, at *7 (same); *Check*, 342 Ill. App. 3d at 159.   Courts also recognize that the defect need not manifest immediately for vehicles to be deemed unmerchantable, so simply because Ms. Quackenbush and Ms. Suelen drove their vehicles for some time prior to experiencing the Defect does not doom their claims. [14]

All Plaintiffs allege the Class Vehicles suffer from a safety defect that puts drivers at risk of catastrophic engine failure.  *See e.g.*, FAC, ¶ 2.  Plaintiffs explain how the vehicles' engines function and why a defective VTC Actuator can lead to engine failure. *Id*., ¶¶  38-43; *see* Sec. III *supra*.  All Plaintiffs have experienced a loud rattling noise when starting the engine and Ms. Quackenbush, Ms. Feeney, and Ms. Prasse have all paid out-of-pocket to have their vehicles diagnosed or their VTC Actuator replaced, which if they had not done, would have put them at risk of their engine failing.  FAC, ¶¶ 12 (Quackenbush paid $788.23), 20 (Pellettieri paid $674.27), 28 (Prasse paid $922.55).  Numerous courts have found that defects such as the one Plaintiffs' have experienced, or lesser, render vehicles unmerchantable.[15]

Defendant's authority is distinguishable.  *Tokar v. Crestwood Imports, Inc.*, 177 Ill. App. 3d 422, 436, (1988) was decided on a developed factual record where Plaintiff failed to

---

[14] *Roe v. Ford Motor Co*., 2019 WL 3564589, at *15 (E.D. Mich. Aug. 6, 2019) (declining to find vehicle merchantable that had 73,000 miles on it before it needed a water-pump repair); *Nelson v. Nissan N. Am., Inc*., 894 F. Supp. 2d 558, 567 (D.N.J. 2012) (breach of implied warranty sufficiently alleged where plaintiffs began experiencing transmission problems prior to 5 years / 60,000 miles on their vehicles); *Henderson v. Volvo Cars of N. Am., LLC*, 2010 WL 2925913, at *10 (D.N.J. July 21, 2010) (allegations of transmission defect when plaintiffs' cars had been driven more than 4 years, or 50,000 miles sufficient to plead an implied warranty claim).

[15] *Stockinger*, 2017 WL 10574372, at *13 (air conditioning system that emitted noxious and foul orders rendered vehicle unmerchantable); *Brand v. Hyundai Motor Am*., 226 Cal. App. 4th 1538, 173 Cal. Rptr. 3d 454, 461 (2014) (open sun-roof rendered vehicle unmerchantable); *In re MyFord Touch Consumer Litig*., 291 F. Supp. 3d at 947 (vehicles with a infotainment system that was defective because it caused "persistent distractions; … and impaired operability by undermining use of the rear-view cameras, climate control systems, and navigation systems" were unmerchantable); *Bryde,* 2016 WL 6804584, at *15 (airbag defect breached implied warranty even though vehicles could be driven); *Asghari*, 42 F. Supp. 3d at 1339 (implied warranty breached where vehicles consumed excess oil).

show *any* defect at trial.  There is no developed factual record here and Plaintiffs have explained the VTC Defect and its ramifications in great detail.  *See* Sec, III *supra*.  *Bayliner Marine Corp. v. Crow*, 257 Va. 121, 128–29, (1999) was also decided after the facts had been developed, and held that since Plaintiff failed to provide "any evidence of the standard of merchantability" the implied warranty of merchantability was not breached.  Simply put, vehicles such as the Plaintiffs' vehicles that suffer from a Defendant that can lead to engine failure do not provide safe and reliable transportation and are not merchantable.

### 2.      The Implied Warranty Claims Do Not Require Privity

Defendant does not contest, nor could it, that Ms. Quackenbush and Ms. Suelen's implied warranty claims under California's Song-Beverly Act do not require privity.  *See* FAC Third Cause of Action (alleging implied warranty claims under Song-Beverly Act (Cal. Civ. Code §§ 1792 and 1791.1, *et seq*.).  The great weight of authority has held there is no privity requirement under the Song-Beverly Act.  *In re MyFord*, 46 F. Supp. 3d at 982.

As to Plaintiffs' claim under Cal. Comm. Code § 2314, where, as here, Plaintiffs may be the intended third-party beneficiaries of agreements between the manufacturer and its authorized dealers, privity is not required.  *MyFord Touch Consumer Litig*., 46 F. Supp. 3d at 982.  Plaintiffs recognize that this Court in *Xavier v. Philip Morris USA Inc*., 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011) declined to recognize the third-party beneficiary exception in California.  Plaintiffs respectfully submit that the situation in *Xavier* was materially different.  In *Xavier*, purchasers of Marlboro cigarettes argued they were third party beneficiaries of "distribution agreements linking the manufacturer to the retailer who ultimately made the sale" here, there is a much closer relationship between the car manufacturers and the dealers as evidenced by the dealership's continued involvement in servicing and repairing Plaintiffs' vehicles.  The facts here are more akin to those in *Gilbert Fin. Corp. v. Steelform Contracting Co*., 82 Cal. App. 3d 65, 69 (Ct. App. 1978) where privity was not required because Plaintiff

benefited from a contract between the contractor and the subcontractor. Numerous other courts since *Xavier* have recognized the exception exists in cases like this one.[16]

In addition, "California Civil Code section 1559 allows a third-party beneficiary to enforce a contract made expressly for his or her benefit." *Bryde*, 2016 WL 6804584, at *16; Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."). Ms. Quackenbush and Ms. Suelen purchased vehicles from Honda's authorized dealers, as such they are intended third-party beneficiaries of agreements between Honda and its dealers. *Stockinger*, 2017 WL 10574372, at *13.

Illinois also recognizes a third-party beneficiary exception. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 595 (E.D.Mich. 2018) (applying Illinois law); see also *Flynn v. FCA US LLC*, 327 F.R.D. 206, 217 (S.D. Ill. 2018) (denying motion for summary judgment on privity ground in automotive defect suit); *Villanueva v. Am. Honda Motor Co.*, 2019 WL 8112467, at *9 (C.D. Cal. Oct. 10, 2019) (applying Illinois law) Ms. Pellettieri and Ms. Feeney also purchased vehicles from Honda's authorized dealers, and their vehicles came with written warranties.

Finally, Virginia distinguishes between implied warranty claims that seek consequential damages and those seeking direct damages—the former claims are not permitted absent privity while the latter are.[17] *Genito Glenn, L.P. v. Nat'l Hous. Bldg. Corp.*, 50 Va. Cir. 71 (1999) ("[A] plaintiff can still recover direct economic damages in a warranty case regardless of privity of contract."); *Bd. of Directors of Bay Point Condo. Ass'n, Inc. v. RML Corp.*, 57 Va. Cir. 295 (2002). "[D]irect damages are continually found to constitute the cost of repairs." *Bd. of Directors of Bay Point Condo. Ass'n, Inc.*, 57 Va. Cir. 295. Ms. Prasse alleges she paid $922.55

---

[16] *MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 982; *Stockinger*, 2017 WL 10574372, at *13; *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 882 (N.D. Cal. 2019); *Bryde*, 2016 WL 6804584, at *16; *see also Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 854 (N.D. Cal. 2018) (recognizing third-party beneficiary exception).

[17] *Loo v. Toyota Motor Sales, USA, Inc.*, 2020 WL 4187918, at *7 (C.D. Cal. Apr. 10, 2020) is distinguishable because Plaintiff did not plead any direct damages that would allow him to take advantage of this exception.

1  to have her VTC Actuator replaced, and she may bring an implied warranty claim to recover

2  those direct damages absent privity.  FAC, ¶ 28.

3          **3.**        **Pellettieri and Feeney Provided the Requisite Notice**

4        In Illinois, "buyers such as the instant plaintiffs must directly notify the *seller* of the

5  troublesome nature of the transaction or be barred from recovering for a breach of warranty."

6  *Connick,*, 174 Ill. 2d at 492, (1996) (emphasis supplied).  "[W]hether and to what extent notice

7  is sufficient is a question of fact not susceptible to a motion to dismiss*." In re Rust-Oleum*

8  *Restore Mktg., Sales Practices & Prod. Liab. Litig*., 155 F. Supp. 3d 772, 799 (N.D. Ill. 2016).

9  Ms. Pellettieri and Ms. Feeney contacted the service departments of the Honda dealers they

10  purchased their vehicles from and told them about the defect in their vehicles.  FAC, ¶¶ 19-22,

11  24.  Plaintiffs also contacted Honda directly through their customer service departments.  *Id.*,

12  ¶¶ 20-21 25.  Plaintiffs gave notice to Honda.  *Francis v. Gen. Motors, LLC*, 2020 WL 7042935,

13  at *12 (E.D. Mich. Nov. 30, 2020) (notice satisfied by presentation of vehicles to dealership for

14  repair).

15      **E.**        **THE FRAUDULENT OMISSION CLAIMS ARE NOT BARRED BY THE**

16              **ECONOMIC LOSS RULE**

17        Although the economic loss rule generally bars tort claims for purely economic losses,

18  in California an exception has been routinely applied in cases where the defendant committed

19  a fraud and violated an independent duty distinct from the contract itself, including fraudulent

20  omissions claims.  *See e.g., In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab.*

21  *Lit.,* 2019 WL 3000646, at *6 (C.D. Cal. May 22, 2019) (exception to economic loss rule

22  applies to fraudulent omissions claims); *Catalan v. GMAC Mortg. Corp*., 629 F.3d 676, 693

23  (7th Cir. 2011) (same) (citation omitted); *Yetter v. Ford Motor Co*., 2019 WL 3254249, at *7

24  (N.D. Cal. July 19, 2019) (same); *Finney v. Ford Motor Co*., 2018 WL 2552266, at *9 (N.D.

25  Cal. June 4, 2018) (same) (citing cases); *Anderson v. Apple Inc*., 2020 WL 6710101, at *18

26  (N.D. Cal. Nov. 16, 2020) (same); *Deseret Tr. Co. v. Unique Inv. Corp.,* 2019 WL 7938223,

27  at *7 (C.D. Cal. Sept. 10, 2019).

28

Relying entirely on *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004), Honda argues that in California an exception to the economic loss rule applies "*only* when a defendant made affirmative misrepresentations." MTD at 7:22-24. But *Robinson*, "did not address the issue of whether [defendant's] intentional concealment constitutes an independent tort." *Anderson*,, 2020 WL 6710101, at *17.*Robinson*, 34 Cal. 4th 979, 992, focused its inquiry on whether the conduct giving rise to the fraud claim was "independent of the contract" if so, the economic loss doctrine would not apply. As subsequent courts have noted, there is no reason that *Robinson's* reasoning does not apply equally to fraudulent omissions claims. *Anderson*, 2020 WL 6710101, at *18; *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.,* 2019 WL 3000646, at *6. The key inquiry remains the same, whether defendant's conduct was distinct from the contract itself. This court should follow the numerous courts that have declined to apply the economic loss rule to bar fraudulent omissions claims.

Virginia also recognizes that when, as here (*See* Sec, IV A-B *supra*) a Defendant fails to disclose a known defect in a product, the economic loss doctrine will not apply. *Stockinger*, 2017 WL 10574372, at *21 (Virginia law "does not bar tort claims for economic losses arising where defendant had violated an independent duty"); *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 362 (2010) (duty not to misrepresent goods is independent of contracts entered into).

Illinois recognizes an exception where "plaintiff's damages are proximately caused by a defendant's intentional, false representation, i.e., fraud" *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 337 (2006); MTD at 7, n 4. As explained above, Honda committed fraud by failing to disclose a known safety defect. *See* Sec, IV. A and B *supra*.

## F. PLAINTIFFS' CLAIMS ARE NOT TIME BARRED

Defendant challenges as time barred the fraud-based claims of those Plaintiffs who purchased their vehicles new (Quackenbush, Suelen and Pellettieri), and the implied warranty claims of all Plaintiffs. Defendant does not challenge the timeliness of any other claims. Defendant's arguments again lack merit. "In general, courts do not dismiss claims

1   under Rule 12(b)(6) for failure to be brought within the statute of limitations, because the

2   statute of limitations is an affirmative defense." *Elward v. Electrolux Home Prod., Inc*., 264

3   F. Supp. 3d 877, 887 (N.D. Ill. 2017).  "[A] complaint cannot be dismissed unless it appears

4   beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of

5   the claim." *Von Saher v. Norton Simon Museum*, 592 F.3d 954, 969 (9th Cir. 2010).

6           This is a fraudulent omissions case in which Plaintiffs allege that Defendant has

7   actively concealed the true nature of the problem.  While Defendant admitted to its dealers

8   that the VTC Actuator was defective, it provided consumers with conflicting information

9   often dismissing the issue as a harmless noise, much as it has done in this case.  FAC, ¶ 58,

10  NHTSA ID No. 11281898 ("Honda claimed it is not damaging the engine"); NHTSA ID No.

11  10781661 (Honda says "this is not causing any damage to my engine"); NHTSA ID No.

12  11119641  ("Asked dealership what it might be and I was told it was nothing.");  NHTSA Id

13  No. 10855418  ("Engineers say it causes 'no damage to the vehicle!'").  Moreover, the

14  defective component is an internal engine part which requires advanced knowledge of

15  automotive mechanics to understand.  Under these circumstances, Plaintiffs cannot be

16  charged with knowing their vehicles suffered from a systemic, undisclosed defect *even when*

17  they experienced the problem.  *Loo*, 2019 WL 7753448, at *12.  Defendant argues that

18  Plaintiffs tolling allegations are insufficient, but they must be read in context of the overall

19  complaint.  Plaintiffs fraud claims, and their California implied warranty claims have been

20  tolled pursuant to the discovery rule, and dismissal of their claims at the motion to dismiss

21  stage would be premature.  *Tanner v. Ford Motor Co*., 424 F. Supp. 3d 666, 671-72 (N.D.

22  Cal. 2019) (discovery rule to tolled implied warranty claim); *Bunn v. Ford Motor Co*., 2020

23  WL 991529, at *3 (N.D. Cal. Mar. 2, 2020) (same); *Tartan Constr., LLC v. New Equip. Servs.

24  Corp*., 2018 WL 4563079, at *2 (N.D. Ill. Sept. 24, 2018) (discovery rule applies to ICFA

25  claims); *Philips v. Ford Motor Co*., 2015 WL 4111448, at *8 (N.D. Cal. July 7, 2015)

26  (discovery rule tolled CLRA, UCL, and fraud claims); *McCabe v. Daimler AG*, 948 F. Supp.

27  2d 1347, 1373 (N.D. Ga. 2013) (ICFA's statute of limitations is subject to the discovery rule).

28

To the extent Defendant may argue on reply that the discovery rule does not toll Mses. Pellettieri's, Feeney's, and Prasse's Illinois and Virginia implied warranty claims, the doctrine of equitable estoppel applies.   Illinois and Virginia recognize that when a Defendant has taken direct or indirect action to prevent a plaintiff from filing an action the statute of limitations is tolled.  *Hanley v. Cottrell, Inc.*, 2006 WL 516731, at *7 (S.D. Ill. Mar. 1, 2006); *Singletary v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 9 F.3d 1236, 1241 (7th Cir. 1993) (recognizing fraudulent concealment as a subset of equitable estoppel in Illinois); *Evans v. Trinity Indus., Inc*., 137 F. Supp. 3d 877, 882 (E.D. Va. 2015) (citing Va.Code. § 8.01-229(D)).   The FAC details Honda's omission and active concealment of the Defect, which prevented consumers from knowing or being able to discover it.  *See* Sec IV. A. 3**.** *supra*.   Plaintiffs' implied warranty claims are not time barred.

## G.   PLAINTIFFS HAVE STANDING TO PURSUE INJUNCTIVE RELIEF

To establish standing for injunctive relief, a plaintiff must demonstrate that he "has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that [they] will again be wronged in a similar way." *Cabebe v. Nissan of N. Am., Inc*., 2018 WL 5617732, at *6 (N.D. Cal. Oct. 26, 2018) (citation omitted). It is not necessary for plaintiffs to allege he intends to purchase a vehicle in the future, as Defendant argues.  MTD at 24:22-26.   Plaintiffs all own vehicles that have a defective VTC Actuator and are continuously at risk of their engine's failing.   Plaintiffs have asked for injunctive relief that includes: Defendant notifying all Class Members of the VTC Defect and providing a non-defective replacement and Defendant extending the warranty on all the Class Vehicles parts components or systems that constitute the VTC Actuator.  FAC, ¶ 167.  Courts have recognized that as current vehicle owners who are continuing to suffer from the VTC Defect, the requested injunctive relief directly addresses, and is necessary to, avoid ongoing harms.[18]

---

[18] *See e.g., Cabebe*, 2018 WL 5617732, at *7; *Lohr v. Nissan N. Am., Inc*., 2017 WL 1037555, at *4 (W.D. Wash. Mar. 17, 2017) (plaintiff had standing to seek injunctive relief despite allegations she would not lease another Nissan Rogue); *Borkman v. BMW of N. Am., LLC*, 2017 WL 4082420, at *5 (C.D. Cal. Aug. 28, 2017) (plaintiff could seek injunctive relief to extend warranty where plaintiff's still owned defective vehicles); *Luong*, 2018 WL 2047646,

1   **H.   PLAINTIFFS MAY SEEK EQUITABLE RELIEF**

2       The Ninth Circuit permits plaintiffs to plead equitable claims even if they are

3   duplicative or superfluous.  *Astiana*, 783 F.3d at 762;[19]  Fed. R. Civ. Pro. 8(d)(2) also permits

4   parties to "set out 2 or more statements of a claim or defense alternatively or hypothetically,

5   either in a single count or defense or in separate ones"  and reflects an understanding that "the

6   time to sort out alternatively pled remedial requests is at the end of a case." *Wildin v. FCA US*

7   *LLC*, 2018 WL 3032986, at *7 (S.D. Cal. June 19, 2018).   Because of this, district courts

8   routinely permit plaintiffs to seek injunctive or equitable relief in addition to damages.  *Fain v.*

9   *Am. Honda Motor Co*., 2019 WL 8690214, at *10 (C.D. Cal. Dec. 19, 2019); *Wildin*, 2018 WL

10  3032986, at *7; *Deras v. Volkswagen Grp. of Am., Inc*., 2018 WL 2267448, at *6 (N.D. Cal.

11  May 17, 2018); *Aberin v. Am. Honda Motor Co., Inc*., 2018 WL 1473085, at *9 (N.D. Cal. Mar.

12  26, 2018).  Finally, *Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 843–44 (9th Cir. 2020)

13  is not applicable here.   *Sonner* simply held that a plaintiff "must establish that she lacks an

14  adequate remedy at law … before *securing*" equitable relief - not before pleading it.  *Id.* at 844

15  (emphasis supplied).

16  **V.   CONCLUSION**

17      For the reasons explained herein, Plaintiffs respectfully request the Court deny

18  Defendant's Motion to Dismiss in its entirety.  In the event the Court grants Defendant's

19  motion in whole or part, Plaintiffs respectfully request leave to amend.

20

21

22

23

24

---

25  at *6 (Plaintiffs adequately alleged "imminent future harm" where they continued to own
    their defective vehicles).

26  [19]  Defendant's cited authority fails to acknowledge the Ninth Circuit's guidance in *Astiana*,

27  783 F.3d at 762.  *See e.g. Huu Nguyen v. Nissan N. Am., Inc*., 2017 WL 1330602, at *4 (N.D.
    Cal. Apr. 11, 2017) (failing to discuss *Astiana*); *Munning v. Gap, Inc*., 238 F. Supp. 3d 1195,

28  1204 (N.D. Cal. 2017) (same).

---

Dated:  January 5, 2021               **GREENSTONE LAW APC**

                                      By:  _s/ Mark S. Greenstone_
                                      Mark S. Greenstone
                                      1925 Century Park East, Suite 2100
                                      Los Angeles, California 90067
                                      Telephone: (310) 201-9156
                                      Facsimile: (310) 201-9160
                                      Email: mgreenstone@greenstonelaw.com

                                      **GLANCY PRONGAY & MURRAY LLP**
                                      Lionel Z. Glancy
                                      Marc L. Godino
                                      Danielle L. Manning
                                      1925 Century Park East, Suite 2100
                                      Los Angeles, California 90067
                                      Telephone: (310) 201-9150
                                      Facsimile: (310) 201-9160
                                      Email: lglancy@glancylaw.com
                                      Email: mgodino@glancylaw.com
                                      Email: dmanning@glancylaw.com

                                      *Attorneys for Plaintiffs*

## <u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.  On January 5, 2021 I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 5, 2021, at Los Angeles, California.

<u>s/ Mark S. Greenstone</u>
Mark S. Greenstone
