**GREENSTONE LAW APC**
Mark S. Greenstone
1925 Century Park East – Suite 2100
Los Angeles, CA 90067
T: 310-201-9156 / F: 310-201-9160
Email: mgreenstone@greenstonelaw.com

January 5, 2022

Hon. William Alsup
450 Golden Gate Avenue, Courtroom 12 – 19th Floor
San Francisco, CA 94102

      Re:    *Quackenbush, et al. v. American Honda Motor Co., Inc., et al.*,
                 No. 3:20-cv-05599 – Letter Brief Update

Dear Judge Alsup,

      On November 30, 2021, Plaintiffs filed a letter brief asking the Court to enforce document subpoenas served on DENSO International America, Inc. ("DIAM"). (Dkt. No. 112.) In response, DIAM filed a letter brief in which it disputed personal jurisdiction and suggested that it had no documents other than sales records (Dkt. No. 117). On December 6, 2021, the Court issued an order permitting Plaintiffs to conduct jurisdictional discovery. (Dkt. No. 119.) Plaintiffs promptly served a subpoena for documents and the deposition of DIAM's person most knowledgeable. **Exhibit A**. DIAM again served a litany of objections and failed to produce any documents. DIAM did produce its Powertrain Senior Manager, Jonathan Share, for a deposition on December 22, 2021. Mr. Share's testimony and documents produced by Defendant American Honda Motor Company, Inc. ("AHM"), which Plaintiffs recently identified, unequivocally establish two things: (1) this Court has specific jurisdiction over DIAM and (2) DIAM's claim that it was merely a "sales conduit" and only has "archived sales records" (*see* Dkt. 117) is inaccurate.

**I.**      **This Court has Specific Jurisdiction Over DIAM**

      This Court has specific jurisdiction over DIAM because it sold the R44 VTC Actuators that are the subject of this case to AHM knowing that they would be incorporated into vehicles sold throughout North America, including within California. Mr. Share testified that the R44 Actuator was supplied through DIAM's Ohio office which is set up to "serve" AHM's North American operations:

> Q. So how did it come to be that DIAM supplied the R44 and R5A2 parts to American Honda Motor Company?
> A. So we effectively quote the product, are awarded the business, and then receive a purchase order. Upon the purchase order, we begin supply of the product.
> Share Tr. 48:21-25.
>
> …

The Honorable William Alsup
January 5, 2022
Page 2

> Q. Can you explain to me everything that DIAM's Ohio office does for Honda North America?
> A. Yes. So effectively, as I kind of stated at the start of this deposition, we act as a –a sales and quality satellite office of DIAM to serve Honda North America.
> Share Tr. 56:12-21 (objections omitted). **Exhibit E.**

Mr. Share further testified that DIAM was aware the R44 Actuators it supplied were placed in vehicles sold in California:

> Q. Is DIAM aware that there are authorized American Honda Motor Company, Inc., dealerships that sell vehicles to consumers in California?
> A. Yes, I would assume so.
> Q. Is DIAM aware that some of the vehicles sold to consumers in California have the VTC actuators installed in them?
> A. All I can say is I would assume, yes.
> Share Tr. 79:2-17. **Exhibit E.**

Documents produced by AHM also confirm that DIAM was aware that the R44 Actuators it supplied to AHM were used—and malfunctioned—throughout North American, including in California. For example a March 5, 2014 presentation prepared by J. Daltorio of DIAM plots the 2013 and 2014 CR-V VTC Actuator defect rate by state, including California. **Exhibit B** (page 5).

Specific jurisdiction exists if: (1) a non-resident defendant purposefully directs its activities towards the forum or performs some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *Schwartzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 902 (9th Cir. 2004). The Supreme Court has held that specific jurisdiction attaches when a company serves a market for a product in the forum state and the product malfunctions there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980); *Ford Motor Co. v. Montana Eighth Judicial District Court*, __ U.S. __, 141 S.Ct. 1017, 1027 (2021). In *Ford*, the Supreme Court quoted language from *World-Wide Volkswagen* contrasting an out-of-state defendant whose product happened to malfunction in the forum state with defendants that regularly and intentionally serve the forum state market. "[I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." *World-Wide Volkswagen* at 297. The Ninth Circuit followed *World-Wide Volkswagen* to find specific jurisdiction in an Oregon district court for a longshoreman's suit against the foreign manufacturer of a defective wire-rope splice for oceangoing vessels that injured the plaintiff in an Oregon port. *Hedrick v. Daiko Shoji Co., Ltd.*,

The Honorable William Alsup
January 5, 2022
Page 3

715 F.2d 1355, 1359 (1983). *See also Maui Elec. Co., Ltd. v. Chromalloy Gas Turbine, LLC*, 942 F.Supp.2d 1035, 1043 (D. Hawaii April 23, 2013) (supplier of aftermarket turbine blades who knew product was being installed in turbines located in Hawaii subject to specific jurisdiction there); *Hawaii Forest & Trail Ltd. v. Davey*, 556 F.Supp.2d 1162, 1170 (D. Hawaii May 5, 2008) (supplier of component incorporated into vehicles that supplier knew were purchased for use in Hawaii subject to specific jurisdiction there).

Although DIAM did not sell its VTC actuators in California, it purposefully availed itself of the California market when it sold them to AHM, in service of AHM's North American market, knowing they would be incorporated in California vehicles. DIAM even tracked VTC Defect manifestation in California. **Exhibit B**. DIAM did not blindly introduce the R44 Actuator into the steam of commerce without an understanding of the specific market it was serving—North America. Plaintiff Mary Quackenbush paid to replace a defective DIAM-supplied VTC Actuator that malfunctioned in California. Under these circumstances, it would not be unreasonable for this Court to enforce a subpoena duly served on DIAM's offices in this District.

## II. DIAM Has Discoverable Documents

It is also clear that DIAM has important documents in addition to sales data and that it simply has not bothered or is unwilling to locate and produce them. DIAM was not merely a sales conduit as it claims. *See* **Exhibit C** (email correspondence between DIAM and AHM concerning the VTC investigation produced by AHM); **Exhibit B** (DIAM presentation re VTC investigation). These documents show that DIAM engineers were involved in the ongoing analysis of the VTC Defect over a period of years and served as a liaison with DIAM's subsidiary in Mexico (DNMX) which manufactured the R44 Actuator. Mr. Share testified that he was only asked to search for sales history data. **Exhibit D** (Sale Tr. 26:23-27:13; 70:3-19; 77:11-24). Not even that sales data was produced.

## III. Conclusion

Plaintiffs request that this Court order DIAM to conduct a genuine document search and produce all documents responsive to the subpoenas that are the subject of Plaintiffs' November 30, 2021 letter. Alternatively, Plaintiffs request that this Court order DIAM to produce those documents demanded as part of jurisdictional discovery (*see* **Exhibit A**) and permit Plaintiffs to more fully brief the jurisdictional question thereafter.

Very truly yours,

*s/Mark Greenstone*
Mark S. Greenstone, Esq.