UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY QUACKENBUSH, MARISSA FEENEY, and ANNE PELLETTIERI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC., and HONDA MOTOR COMPANY, LTD., a Japanese Corporation,<br><br>Defendants. | No. C 20-05599 WHA<br><br>**ORDER RE MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this certified consumer class action, defendants move for summary judgment. The motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Vehicle owners who purchased their cars from authorized Honda dealers allege that an engine component within their cars, namely, the variable timing control actuator 14310-R44-A01 ("VTC actuator"), was defective. Sometimes, the VTC actuator rattled on vehicle ignition due to the premature disengagement of a stopper pin located within it. Honda discovered the problem beginning in 2008 after receiving complaints of rattling and pursued an eight-year investigation. After implementing numerous countermeasures to cure the problem, Honda ultimately replaced

the VTC actuator model with a new part. Plaintiffs say Honda's failure to disclose this defect injured them and posed a significant safety hazard.

Plaintiffs filed their class action complaint in August 2020, then a first amendment in November 2020, the operative complaint. A motion to dismiss failed in its entirety in February 2021. Discovery ensued for several months, and plaintiffs moved for class certification in October 2021 (Dkt. Nos. 1, 20, 36, 68). In December 2021, after full briefing and additional discovery disputes, an order certified three classes. Both parties filed motions for reconsideration. An order dated April 27, 2022, redefined the certified classes and clarified the operative class claims (Dkt. Nos. 156, 157, 169).

There are now three certified classes. *First*, Mary Quackenbush represents the "California Repair Class," which consists of all persons who purchased a new or used class vehicle equipped with a VTC actuator from an authorized Honda dealer in California, and who paid to have their VTC actuator repaired by an authorized Honda dealer in California.[1] This class is pursuing certified claims for (1) violation of California's Consumer Legal Remedies Act (CLRA); (2) violation of California's Unfair Competition Law (UCL); and (3) fraudulent omission.

In her individual capacity, Quackenbush also pursues claims for breach of implied warranty pursuant to (1) California's Song-Beverly Act and (2) California Commercial Code Section 2314.

*Second*, Marissa Feeney represents the "Illinois Repair Class," which consists of all persons who purchased a new or used class vehicle equipped with a VTC actuator from an authorized dealer in Illinois, and who paid to have their VTC actuator repaired by an authorized Honda dealer in Illinois. This class is pursuing claims for (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and (2) fraudulent omission.

In her individual capacity, Feeney also pursues a claim for breach of implied warranty pursuant to Section 2-316 of the Illinois Commercial Code.

*Third*, Anne Pellettieri represents the "Illinois New and Used Purchaser Class" which

---

[1] "Class vehicle," as used in this order and in our class definitions, refers to the 2012 Honda Accord, the 2012-2014 Honda CR-V, and the 2012-2015 Honda Crosstour.

consists of current owners of both new and used class vehicles who purchased their class vehicles equipped with a VTC actuator from an authorized Honda dealer in Illinois, and former owners of the same who resold (or traded it in) to an authorized Honda dealer in Illinois. No member of the Illinois Repair Class can be a member of this class, and any purchaser who received an actuator replacement free of charge is excluded. This class is pursuing the same claims as the Illinois Repair class, namely, (1) violation of the ICFA and (2) fraudulent omission.

In her individual capacity, Pellettieri also pursues a breach of implied warranty claim in violation of Section 2-316 of the Illinois Commercial Code.

Defendants American Honda Motor Company and Honda Motor Company now move for summary judgment on all named plaintiffs' individual implied warranty claims, Anne Pellettieri's ICFA and fraudulent omission claims, the California Repair Class's fraudulent omission claim, and various damages arguments under both Illinois and California law. This order follows full briefing and oral argument.

**ANALYSIS**

Summary judgment is proper where the admissible evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists when there is sufficient evidence such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49 (1986). Material facts are those which may affect the outcome of the case. *Ibid*. "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). But "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). Where the nonmoving party bears the burden of proof on a given issue, summary judgment is appropriate if the moving party demonstrates an absence of evidence to support the nonmoving party's position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

1.   **INDIVIDUAL PLAINTIFFS' CLAIMS.**

    A.   **FEENEY'S AND PELLETTIERI'S IMPLIED WARRANTY CLAIMS.**

Plaintiffs do not challenge dismissal of Pellettieri and Feeney's claims for breach of implied warranty in violation of Section 2-316 of the Illinois Commercial Code (Opp. 25). Accordingly, defendants' motion for summary judgment on the Illinois implied warranty claims is **GRANTED**.

    B.   **QUACKENBUSH'S IMPLIED WARRANTY CLAIMS.**

Defendants offer no argument for summary judgment regarding Quackenbush's implied warranty claim under the California Song-Beverly Act. Accordingly, that claim remains ripe for resolution by a jury.

Defendants, however, move for summary judgment on Quackenbush's implied warranty claim under Section 2314 of the California Commercial Code. Section 2314 provides "[a] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." The general rule in California is that "privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and subsequent purchaser who is in no way a party to the original sale." *Burr v. Sherwin Williams Co.,* 42 Cal. 2d 682, 695 (1954). A plaintiff asserting breach of warranty claims under Section 2314 "must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F. 3d 1017, 1023 (9th Cir. 2008). A buyer and seller stand in privity only if they are in adjoining links of the distribution chain; an end consumer who buys products from a retailer is not in privity with the manufacturer of the products. *Ibid.* Although some particularized exceptions to the privity requirement have developed in California law, none applies here.[2] This is a matter of California law, and California requires privity. Our own court of appeals recognized this in *Clemens*, a case involving the same fact scenario of a vehicle manufacturer and an end-user plaintiff who

---

[2] The other exceptions arise "[w]hen the plaintiff relies on written labels or advertisements of a manufacturer" as well as "in special cases involving foodstuffs, pesticides, and pharmaceuticals, and where the end user is an employee of the purchaser." See *Clemens*, 534 F.3d at 1023.

4

1  purchased their car from a retailer. That decision held the "lack of vertical privity requires the
2  dismissal of [plaintiff's] implied warranty claims." *Id*. at 1024. Similarly, in *Xavier v. Philip*
3  *Morris USA*, *Inc.,* the undersigned judge reaffirmed Section 2314's privity requirement. 787 F.
4  Supp. 2d 1075, 1083 (N.D. Cal. 2011). In that case, plaintiffs argued privity was not required
5  because a California Court of Appeal decision, *Gilbert Financial Corporation v. Steelform*
6  *Contracting*, had recognized a third-party beneficiary exception. 145 Cal. Rptr. 448, 450 (Ct.
7  App. 1978). *Gilbert*, however, involved the specific circumstance of a homeowner suing a
8  construction subcontractor. It explicitly held its decision applied to "contracts of the creditor
9  beneficiary type" and the decision took care to warn "[t]o keep this opinion concise, we do not
10 discuss the broader concepts. . . ." *Id.* at 451. Plaintiff Quackenbush acknowledges the general
11 privity requirement, but nevertheless argues *Gilbert* has since been broadened by *Burch v.*
12 *Superior Court*. 223 Cal.App.4th 1411, 1422-23 (2014). This order disagrees.

13    The exception to the privity requirement derived from *Gilbert* and *Burch* is most
14 accurately summarized as "[a] real property owner could maintain a cause of action against a
15 subcontractor for breach of an implied warranty of quality and fitness despite the lack of a
16 contract between the owner and the subcontractor." *See Burch,* 223 Cal. App.4th at 1423. Both
17 *Gilbert* and *Burch* involved construction on real property and a homeowner's right to sue a
18 subcontractor. Much of *Burch*'s reasoning discussed caselaw specific to "sales contract[s] for
19 newly constructed real property" and the inherent expectation that "the completed structure was
20 designed and constructed in a reasonably workmanlike manner." *Id*. at 1422. This specific
21 context is significant because, as our court of appeals has recognized, "California courts have
22 painstakingly established the scope of the privity requirement under California Commercial
23 Code section 2314, and a federal court sitting in diversity is not free to create new exceptions to
24 it." *Clemens* at 1024. Maintaining the application of the exception to the real estate context is in
25 alignment with the California authority and provides deference to California courts to define
26 their own exceptions.

27    It is true that some judges in this district have distinguished *Clemens* and have found that
28 a broad third-party beneficiary exception exists based on *Gilbert*. This order respectfully

United States District Court
Northern District of California

1  disagrees with those decisions. Again, this is a matter that is exclusively up to the California
2  courts, and the California courts have been clear that privity is required, even in the vehicle
3  manufacturer context at issue. *See Anthony v. Kelsey-Hayes Co.,* 25 Cal. App. 3d 442, 448 (Ct.
4  App. 1972) (sustaining demurrer against a vehicle purchaser attempting to sue the tire
5  manufacturer because "it is settled law in California that privity between the parties is a
6  necessary element to recovery on a breach of an implied warranty"). As California law currently
7  stands, save and except for real estate construction cases allowing the homeowner to sue the
8  subcontractor, no third-party beneficiary exception has ever been applied in a citable decision.
9  The exception simply cannot apply here.

   If broadened in the manner plaintiff now seeks, the privity requirement would vanish.
All end-user purchasers of consumer products could claim exempted status. *See In re Seagate Tech. LLC Litig.,* 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017) (Judge Joseph Spero) (reasoning such an interpretation would result in a "nullification of the rule stated in *Clemens*"). Accordingly, defendants' motion for summary judgment on this claim is **GRANTED**.

### C.   PELLETTIERI'S ICFA AND FRAUDULENT OMISSIONS CLAIMS.

Honda argues Pellettieri's fraudulent omission and Illinois Consumer Fraud Act (ICFA) claims are time-barred because the limitation period had passed before she was added to plaintiffs' first amended complaint on November 13, 2020. The applicable limitation periods are five years for fraudulent omission and three years for the ICFA. *See* 735 Ill. Comp. Stat. § 5/13-205; 815 Ill. Comp. Stat. § 505/10a(e). In Illinois, the discovery rule delays the commencement of the statute of limitations until the plaintiff knows or reasonably should know that she has been injured and that her injury was wrongfully caused. *Jackson Jordan v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249 (1994). Such a determination is a question of fact. *Id*. at 250.

Pellettieri bought her car on August 29, 2014, and she began to hear a rattling noise at startup one or two years into owning the car. At that time, she called her Honda dealer who told her the noise was "normal and not to worry about it." In or around August 29, 2017, Pellettieri's father began to voice concern about the noise and the car's sluggish drive. On two separate

occasions — July 1 and October 6, 2020 — Pellettieri's father called American Honda to ask about the noise. He was told each time by Honda that the rattle was "a normal characteristic of th[e] part" and the noise "did not affect safety, operation, nor reliability of the vehicle" (*See* Opp. at 12-15; Reply 4-6). This was apparently regular practice, as such statements from Honda's representatives were also repeatedly told to other class members who similarly called to inquire about the VTC rattle. Here are examples of defendants assuring customers who called that the rattle was not a cause for concern:

> "I informed her that the issue to which she was referring was not an issue because the noise did not affect the performance of the vehicle, it was just a noisy part . . . I apologized . . . but restated that there is no defect with the vehicle and her vehicle is functioning as designed" (Greenstone Decl. Ex. C at 40).

> "[The customer] states that they tell him AH is aware of the concern but won't do anything about it. . . I stated that AH is aware of the concern and . . . that replacing the part will only offer temporary relief. He says that he does not believe the dealer when they tell him that the noise is not causing harm to his engine. I stated that our engineers have confirmed that information. . . ." (Greenstone Decl. Ex. C at 41).

> "I informed the customer that America Honda is aware that there is an issue with the VTC actuator but as of right now it has been determined a normal characteristic. I explained that this noise does not cause drivability issues and stated that the issue will come back although [sic] the part is replaced" (Greenstone Decl. Ex. C at 47).

The parties are in dispute as to when Pellettieri had enough information to reasonably reach a conclusion that her car was defective and that the defect was wrongfully caused by Honda. Honda contends Pellettieri had enough information to reach such a conclusion when she first began to hear the noise or, at the very latest, when her father told her he was concerned about the noise and the car's sluggish drive. Defendants assert as a consequence, Pellettieri's claims are time-barred because the five-year limitation period for fraudulent omission was triggered one year after purchase (August 29, 2015), and it ran out on August 29, 2020. Similarly, the three-year limitation period for the ICFA claim, defendants argue, began at the latest when Pellettieri's father voiced his concern on August 29, 2017, and expired on August 29, 2020 (Reply at 4-5). Plaintiffs maintain Pellettieri's claims are not time-barred because given assurances from Honda that the noise was a normal characteristic of the vehicle part, she had no reason to think she was harmed,

7

1  or the harm resulted from Honda's own wrongful conduct. Plaintiffs assert Pellettieri started
2  believing she was harmed only after her father's second call to Honda in October 2020 (Opp. at
3  14).
4        The evidence is conflicting as to whether and when Pellettieri had enough information to
5  conclude that she was injured, and that the injury was wrongfully caused. A jury could reasonably
6  find that Pellettieri's claim is not time-barred due to defendants' lulling her into a false sense of
7  security through misleading statements. Thus, summary judgment based on the statute of
8  limitations as to Pellettieri's fraudulent omission and ICFA claims is **DENIED**.
9        These claims, however, suffer from a class-wide defect that will be discussed below.
10     **2.**    **CALIFORNIA REPAIR CLASS CLAIMS.**
11         **A.**    **FRAUDULENT OMISSION CLAIM.**
12       Under California law, the common-law elements for fraudulent omission are (1)
13 defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose
14 the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with
15 intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted
16 differently if she had known of the concealed or suppressed fact; and (5) the plaintiff sustained
17 damage as a result of the concealment or suppression. *See Peel v. BrooksAmerica Mortg. Corp.*,
18 788 F. Supp. 2d 1149, 1159 (C.D. Cal. 2011). To establish fraud through nondisclosure or
19 concealment of facts, it is necessary to show that the defendant "was under a legal duty to
20 disclose them." *Buckland v. Threshold Enterprise, Ltd.*, 155 Cal. App. 4th 798, 807 (2007), *as*
21 *modified* (Oct. 22, 2007) (cleaned up).
22       Here, plaintiffs allege defendants "concealed from and failed to disclose to plaintiffs and
23 class members the defective nature of the class vehicles and their VTC actuator" and "had
24 plaintiffs known about the defective nature of the class vehicles' VTC actuator, they would not
25 have purchased or leased the class vehicles or would have paid less for them" (FAC at ¶ 164).
26 Defendants attack this claim by arguing that it is barred under the economic loss rule.
27 California's economic loss rule states "[w]here a purchaser's expectations in a sale are
28 frustrated because the product he bought is not working properly, his remedy is said to be in

contract alone, for he has suffered only economic losses." The main point of this rule isto "prevent the law of contract and the law of tort from dissolving one into the other." Thus, unless a plaintiff can demonstrate a harm "above and beyond" a broken contractual promise, the economic loss rule prevents additional recovery in a tort cause of action. *See Robinson Helicopter Co. v. Dana Corp.,* 34 Cal. 4th 979, 988-89 (2004) (cleaned up). Defendants argue that plaintiffs' fraudulent omission claim must fail as barred, because plaintiffs' damages here are "purely economic and derive from Honda's alleged breach of its warranty" (Br. 5–6). Defendants' argument on this point fails for two reasons.

*First*, the economic loss rule is not implicated because, as explained above with Quackenbush's individual implied warranty claim, there is no contractual privity between California purchasers and defendants. Defendants attempt to have it both ways by arguing, on the one hand, this claim must be controlled by warranty remedies alone, yet on the other hand, no implied warranty exists at all due to lack of privity. This gimmick cannot prevail. This order's finding of no privity (at defendants' urging) bars the application of the economic loss rule. *See Veterans Rideshare, Inc. v. Navistar Int'l Corp.*, 2021 WL 2206479, at *4 (S.D. Cal. June 1, 2021) (reasoning that the absence of privity has been found to preclude application of the economic loss rule and collecting cases.)

*Second*, even if the economic loss rule were implicated, plaintiffs' fraudulent omission claim is not a "purely monetary" one that should be controlled by warranty alone, as there are additional damages alleged "above and beyond" the breach of contract itself. As the California Supreme Court ruled in *Jimenez*, a manufacturer could appropriately be held liable in tort for physical injuries — including damage to property — other than the product itself. This is so even when the product is one part of a whole, such as defective windows causing separate property damage to other parts of a house. *See Jimenez v. Superior Court*, 29 Cal. 4th 473, 483 (2002).

Defendants argue the physical damage in this case is the same as the defect itself, because standing alone, the VTC actuator rattle is nothing more than a "fleeting noise" (Reply Br. 1). But, plaintiffs allege and have produced evidence showing that the defective VTC

9

1    actuator damages other parts of the engine. They also seek damages for harms produced *as a*

2    *result of* the rattling, including damages to the timing chain, timing chain tensioners, and other

3    alleged vehicle expenses such as towing costs (Opp. 17, FAC ¶ 60). Thus, the fraudulent

4    omission claim is not focused on redeeming damages only based on the defect of rattling itself.

5    A genuine dispute exists as to whether the defect (the rattling VTC actuator) is causing other

6    physical safety hazards (various alleged effects on the engine itself). This will be left to the jury

7    to decide.[3]

8    Summary judgment on the California Repair Class fraudulent omission claim is **DENIED**.

### B.    DAMAGES UNDER THE UCL AND CLRA.

The California Repair Class is composed of owners who actually paid for the repair and now want to be reimbursed for the cost of repair. Defendants, however, assert that the cost of repair does not qualify as a form of restitution under the UCL or CLRA. Defendants are incorrect. Reimbursing the class members for the cost of repair would be a classic form of restitution under the UCL and CLRA, assuming, of course, that plaintiffs prove liability. Again, members of this class by definition have already paid out-of-pocket for the repair. For reasons identified in the proceeding section, this order rejects defendants' argument that plaintiffs have failed to show an inadequate remedy at law and thus cannot also be awarded restitution.

Defendants also attempt to make a tracing argument, stating that Quackenbush and other plaintiffs cannot clearly trace their particular funds or property to defendants, as they have paid money to a third-party dealership. Thus, the argument goes, plaintiffs cannot successfully establish restitution, which requires defendants to return plaintiffs' unfairly obtained money (Br. 18). Defendants' attempt to distance themselves from profits gained by their own certified

---

[3] Of note, defendants concede that an exception to the economic loss rule exists where there has been affirmative misrepresentation but argue the exception must not be applied to this fraudulent *omission* claim (Br. 5). Our court of appeals has certified the question to the California Supreme Court, and there exists a current split on the issue within our own district. *See Rattagan v. Uber Technologies, Inc.,* 19 F. 4th 1188, 1191-92 (9th Cir. 2021). Due to the two other applicable exceptions described above, it is not necessary to resolve this question of law now. As of the filing of this order, no response to the certified question has been provided by the California Supreme Court.

1  dealers cannot rightfully prevail, especially given that they refused to provide evidence during
2  discovery that would permit plaintiffs to make such a showing. In this respect, defendants are
3  hoisted by their own petard. This motion is **DENIED.**

### 3. ILLINOIS NEW AND USED PURCHASERS CLASS DAMAGES.

Regarding only the Illinois New and Used Purchaser Class, defendants argued at the hearing that there can be no recovery for damages for either fraudulent omission nor violation of the ICFA, because plaintiffs have not shown that "injury is imminent or at least quite likely to occur." *See In re General Motors Type III Door Latch Litig.,* 2001 WL 548755 at *2 (N.D. Ill. May 21, 2001). Because individuals in this class are very unlikely to ever experience the VTC rattle, defendants argue, they should not be compensated for repair damages, which is the only damages model plaintiffs conceded they have proffered for all classes in this case. Such a result would be overcompensation for those who will never actually experience the contemplated injury. Defendants base their argument on the statistics provided by plaintiffs' own expert that at 150,000 miles, only 23.41% to 32.18% of class members will ever experience the VTC rattle. When measured at 200,000 miles, the projected VTC rattle rate increases to a range of 35.74% to 64.40%.

Plaintiffs counter that the standard proffered by defendants is not an accurate representation of Illinois law, and instead, the injury occurs at the time of sale because plaintiffs lost the "benefit-of-the bargain" by acquiring vehicles with a defect. To make these buyers whole, plaintiffs maintain, they should be compensated the price of repair, which serves as a proxy of benefit-of-the-bargain damages (*i.e.,* what plaintiffs would have gotten had they received a VTC actuator that worked without defect).

This order is persuaded by *In re General Motors'* holding that where the injury has not and will not manifest for a large majority of the class, it makes little sense to allow a damage calculation based on the cost of repair. A damage calculation aimed at diminished value would be more suitable in such an instance, but plaintiffs have not provided any such calculation. Most drivers trade in their cars before 200,000 miles, so this class is composed of owners who will never experience the problem (and even for those who keep the car for over 200,000

11

miles, only 35.74% to 64.40% will experience it). For example, if a car that has not yet rattled is worth $250 less because of the risk that it might rattle in the future, then $250 is the correct answer, not a higher number equal to the cost of repair. The diminution in value should be based on the cost of repair discounted by the probability that the repair will be unneeded. To use repair cost as a proxy for the diminution of value caused by the risk of a need for repair would provide a windfall. Under *Daubert*, this order will not let that theory go to the jury. There being no class-wide method of proving the diminution of value, these claims are **DISMISSED WITH PREJUDICE**.

### 4. DEFENDANTS' ARGUMENT ON ALL CLAIMS.

Defendants attempt to resolve all class and individual plaintiffs' claims by globally arguing that there is in fact no safety-related defect. As explained above, plaintiffs have sufficiently offered proof of physical damages to their engines as a result of the VTC actuator rattling at start up. Defendants attempt to combat this showing by various counter arguments, including that engine failure will never actually materialize due to illumination of the vehicle's check-engine light (assuming that prudent drivers would get their cars checked after being alerted by the light). Such defenses are not appropriate for resolution on summary judgment. This involves a factual analysis on the core issue of whether the proof proffered by plaintiffs amounts to a safety-related defect. Further, what a reasonable person would do when they see a check-engine light is an inherently factual inquiry. Defendants will be free to make all arguments regarding the existence and salience of the alleged defect and resulting damages to a jury, who will ultimately decide this hotly contested issue. Summary judgment of all claims on the basis of a "no-defect" argument is **DENIED**.

## CONCLUSION

For the foregoing reasons, defendants' summary judgment motion is resolved as follows: (1) Feeney's and Pellettieri's individual implied warranty claims are **DISMISSED**; (2) Quackenbush's individual implied warranty claim under Section 2314 is **DISMISSED** (3) the Illinois New and Used Purchaser Class's fraudulent omission and ICFA claims are **DISMISSED.**

Summary judgment as to all remaining claims and arguments is **DENIED**.  Trial is set for **JULY 24, 2023, AT 8 AM.**

**IT IS SO ORDERED.**

Dated: January 13, 2023.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13