United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY QUACKENBUSH, and MARISSA
FEENEY, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

    v.

AMERICAN HONDA MOTOR
COMPANY, INC.,

        Defendant.

No.  C 20-05599 WHA

**ORDER RE TRIAL AND POST
TRIAL MOTIONS**

**INTRODUCTION**

      In this certified consumer class action involving an alleged defective car part, there are a variety of motions from both parties:  (1) defendant moves to decertify the class (Dkt. No. 350); (2) defendant renews their motion for judgment as a matter of law (Dkt. No. 357, 382); (3) plaintiffs move to alter judgment (Dkt. No. 381); (4) plaintiffs move for attorney's fees and service award (Dkt. No. 377).  There are also two outstanding motions to seal (Dkt. Nos. 294, 396).  This order addresses each in turn.

**STATEMENT**

      The facts of this action are more thoroughly recounted in prior orders.  *See Quackenbush v. Am. Honda Motor Co., Inc.*, 650 F. Supp. 3d 837, 840–42 (N.D. Cal. 2023).  In sum, the two certified classes that remain consist of vehicle owners in California and Illinois who purchased vehicles from authorized Honda dealers containing variable timing control actuator 14310-

R44-A01 ("VTC actuator"), an engine component that plaintiffs claim was defective, and paid out of pocket to have the defect repaired.  Honda discovered the problem with the VTC actuator beginning in 2008, after receiving complaints of rattling, and pursued an eight-year investigation.  Plaintiffs' two class claims are that Honda's failure to disclose this defect violated consumer protection statutes under California and Illinois state law, namely California's Consumer Legal Remedies Act ("CLRA") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").  A jury found Honda liable on the Illinois claim for that corresponding class of plaintiffs at trial, but not on the California claim.  The parties had stipulated to damages in the event of a finding of liability, and so defendant was found liable for $1,398,624 in damages to the Illinois claim.

The classes consist of owners who paid out of pocket to have their cars repaired. Defendant moves to decertify the classes and renews their motion for judgment as a matter of law.  Plaintiffs move to alter the judgment and for attorney's fees.  This order follows full briefing and oral argument.

## ANALYSIS

This order addresses the outstanding motions in the order listed above.

### 1.    DEFENDANT'S MOTION TO DECERTIFY CLASS.

We had a jury trial and Honda lost as to the Illinois class.  The jury could reasonably have found the facts against Honda, who wants to relitigate the reasoning that led to the class being certified before trial.  It bears repeating that the broader classes sought by plaintiffs' counsel were not certified.  Smaller classes consisting of these consumers who actually paid out of pocket to have the defect repaired were the only ones that made it past summary judgment.

Defendant moves to decertify the class because "Plaintiffs have not shown Defendant had knowledge of a defect at the time each class vehicle was sold" (Decertification Br. 5, Dkt. No. 350).  Defendant argues that because Honda implemented varying countermeasures to address the VTC actuator rattle over time, "there were actual lapses of time between when Honda believed it solved the VTC actuator rattle with the operative countermeasure and when Honda

2

once again learned vehicles were continuing to exhibit the VTC actuator rattle in the market" (*ibid.*).  And because class plaintiffs purchased their vehicles at varying times throughout, the argument goes, whether Honda had knowledge about the VTC actuator rattle depends on when each plaintiff purchased their class vehicle.

Our prior order denying reconsideration of class certification clarified that "this order finds our record contains common evidence going to Honda's knowledge of a safety defect." *Quackenbush v. Am. Honda Motor Co., Inc.*, 2022 WL 1240866, at *6 (N.D. Cal. Apr. 27, 2022).  Recall our order certifying the classes already found that "the R44 pin defect remained more than 'substantially similar[ ]' over time" such that "[d]ifferences in Honda's knowledge of the precise mechanism of the pin malfunction do not affect Honda's knowledge about premature disengagement.  While Honda 'intended' for each countermeasure to permanently end the rattle, such belief would not necessarily defeat class certification." *Quackenbush v. Am. Honda Motor Co., Inc.*, 2021 WL 6116949, at *5 (N.D. Cal. Dec. 27, 2021).  Our order denying reconsideration made clear that defendant's arguments as to the 2011 Honda study and vehicle repair requests "go to weight," since "the defect remained the same during the class period, making the 2011 study applicable to all class vehicles."  2022 WL 1240866, at *4–6.  That study and the three tests Honda used to understand the VTC actuator rattle featured heavily at trial as evidence relevant to defendant's common knowledge of the alleged defect.

At bottom, the glibness of defendant's argument is self-evident:  defendant argues that Honda's knowledge of the defect becomes variable when Honda "*believed* it solved the VTC actuator rattle" (*ibid.* (emphasis added)).  The argument conflates Honda's knowledge of the VTC actuator rattle with a determination on the merits for whether that rattle is a defect.  Just because Honda believed (maybe) the rattle would no longer manifest (maybe) does not mean that the jury had to find Honda did not know the inherent design was defective such that other (or identical, as it turns out) problems could manifest.  Given the six countermeasures Honda employed, and the years-long study of the VTC actuator rattle before our class period even began, there was enough common proof as to whether Honda knew about the alleged defect,

which remains sufficient to sustain the certified classes.  Defendant's motion to decertify the classes is **DENIED**.

### 2.    DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW.

Defendant moved for judgment as a matter of law before the action was submitted to the jury (Dkt. No. 357).  That motion was not ruled on before submission to the jury, so pursuant to Rule 50(b) it is **DENIED AS MOOT**.  Defendant then filed a renewed motion for judgment as a matter of law and alternatively for a new trial (Dkt. No. 382).  Defendant argues it is entitled to judgment as a matter of law on the Illinois class claim because:  (1) plaintiffs failed to establish a safety hazard; (2) because some class members did not suffer actual loss, and; (3) because there is insufficient evidence that each and every Illinois class member was deceived by a communication from Honda.

### A.    Safety Hazard.

The relevant law in California differed from the relevant law in Illinois.  In California, the defect had to go to safety or to central functionality.  *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 860 (9th Cir. 2018).  Honda prevailed under this standard.  In Illinois, however, the law was more generous to consumers.  In Illinois, the defect had to be material to consumers.  *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 739–40 (7th Cir. 2017).  Honda wants to equate the two, but they are explicitly different.  Honda lost under the Illinois law and the obvious reason is that our jury found that the grinding rattle, which was admittedly a defect, would have been material to Illinois consumers.  It's as simple as that.

To repeat, defendant's argument is misplaced because Illinois law — unlike California law — is not limited to the two avenues of unreasonable safety hazard or unreasonable risk to central functioning.  "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase."  *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996).  True, our order certifying the class stated that "a safety hazard is subject to common proof" which was sufficient to certify both class claims under different state laws.  2021 WL 6116949, at *6.  But that is precisely because the same evidence

4

plaintiffs presented as showing a safety hazard likewise supports materiality of the alleged defect under Illinois law:  "Plaintiffs have presented some evidence to suggest that a faulty chain *could* cause engine failure.  This order does not credit that theory as true, merely acknowledges that it represents the key common question, and that it remains subject to resolution in one fell swoop." *Ibid.*

Defendant suggests that "extrinsic evidence in the form of consumer surveys or market research" is necessary whenever materiality is in doubt (JMOL Reply 4–5, Dkt. No. 392 (citation omitted)).  However, defendant's cited decision concerned a deceptive labeling claim on summary judgment, for which the plaintiffs "ha[d] not gone beyond the pleadings" and "offered no evidence that the products fell short of consumers' expectations in any material way." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 976 (7th Cir. 2020).  By contrast, here evidence was presented at trial showing Honda's own years-long investigation into the VTC actuator rattle based on problems consumers were having.  Illinois class representative Marissa Feeney likewise testified at trial how she "had a feeling that it was a part problem and not just a wear-and-tear problem" (Tr. Aug. 23, 2023, at 433–35, Dkt. No. 363).  "The standard for materiality under the ICFA is an objective standard." *Cirone-Shadow v. Union Nissan of Waukegan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997) (Judge Charles P. Kocoras).  The common question therefore is not whether each and every consumer subjectively believed the omission to be material, but whether a reasonable consumer would have so believed.  And a jury could have reasonably concluded that the VTC actuator rattle and the concern it implicated regarding functionality of the engine was "material."  On the present trial record, there is "sufficient evidence to support the jury's conclusion." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008)).

While defendant admits a safety hazard would be deemed automatically material under Illinois law, it does not follow that a *non*-safety hazard would *not* be material.  To repeat, Illinois consumers could easily have viewed a grinding rattle in the engine as a material worry.  Consumers were not required to assume that it was merely an annoyance.

5

1

2

3         **B.**    **Actual Loss.**

4       Defendant next argues that because the defect for some Illinois class plaintiffs manifested

5 beyond the useful life of their class vehicle (which defendant argues is 150,000 miles driven),

6 those class plaintiffs suffered no injury.  Again, this argument has been foreclosed by orders

7 past at class certification:

8                Plaintiffs' damages model is amenable to resolution on a class-
wide basis.  The model "computes the damages necessary to

9                restore [c]lass [m]embers to the position they would have occupied
had there been no defect (*i.e.* to give the benefit of their bargain),"

10                as measured by "the average cost of repair."  [*Nguyen v. Nissan N.
Am., Inc.*, 932 F.3d 811, 821 (9th Cir. 2019)] (Rep. Br. at 9).  This

11                matches plaintiffs' theory of liability.  *Nguyen* squarely approved
the model with respect to both the CLRA and implied warranty

12                claims.  *Nguyen*'s logic flows to the Section 17200 (which is
premised in part on CLRA), ICFA, and tort claims, as well because

13                the benefit of the bargain method comports with the theory of
fraud liability and will accurately "measure damages" needed to

14                make the consumers whole.  *Comcast Corp. v. Behrend*, 569 U.S.
27, 36 (2013); *see Butler v. Sears, Roebuck & Co.*, 727 F.3d 796,

15                801 (7th Cir. 2013).

16 2021 WL 6116949, at *7.  The benefit bargained for by class plaintiffs is a vehicle that did not

17 contain this VTC actuator defect.  When a class plaintiff pays out of pocket to rectify this

18 defect unknown to them, that is what the purchase price should have been discounted by.  This

19 is why "[a]s *Nguyen* stated, the damage is incurred at the time of sale."  *See ibid.*

20       This is also why our two certified classes are defined as those who had paid out of pocket

21 for a repair.  Recall that at summary judgment, the Illinois New and Used Purchaser class was

22 dismissed with prejudice on the basis defendant now argues.  That class consisted of current

23 and former owners of class vehicles purchased from authorized Honda dealers regardless of

24 whether the VTC rattle had manifested (without overlap with the Illinois Repair class who had

25 all paid for a repair).  The summary judgment order explained plaintiffs' own expert had

26 estimated that by 150,000 miles, "only 23.41% to 32.18% of class members will ever

27 experience the VTC rattle."  650 F. Supp. 3d at 847.  Therefore, "where the injury has not and

28 will not manifest for a large majority of the class, it makes little sense to allow a damage

1    calculation based on the cost of repair."  *Ibid.* (citing *In re Gen. Motors Type III Door Latch*

2    *Litig.*, No. 98 C 5836, 2001 WL 548755, at *2 (N.D. Ill. May 21, 2001) (Judge James B.

3    Zagel)).

4         To repeat, the current Illinois class is limited to those for whom the defect did manifest,

5    *and* that the repair was paid for out of pocket.  If the defect does *not* manifest, then such buyer

6    is in the equivalent position of someone who bargained for a vehicle *without* the defect, and

7    thus is not injured.  The same logic applies to someone who did not have to pay out of pocket

8    for a repair, which is why "any class member who received a free replacement part has

9    suffered no injury and is not a class member."  *Quackenbush*, 2022 WL 1240866, at *2.  The

10   upshot of this theory is that the bargain at issue is specific to this defect — it is not a bargain

11   for a vehicle that will function without defect generally during its useful life.  The defect at

12   issue and the corresponding injury of overpayment is thus not tied to a class vehicle's useful

13   life: "[T]he fraudulent omission claim is not focused on redeeming damages only based on the

14   defect of rattling itself.  A genuine dispute exists as to whether the defect (the rattling VTC

15   actuator) is causing other physical safety hazards (various alleged effects on the engine itself).

16   This will be left to the jury to decide."  *Quackenbush*, 650 F. Supp. 3d at 846.  The jury found

17   a defect, and all members of the remaining Illinois class — all of whom paid out of pocket to

18   redress an engine that rattled — thus overpaid for their class vehicle, no matter the condition or

19   mileage of that vehicle when purchased.

20                    **C.    Deceived by Communication.**

21        Defendant argues that "Plaintiffs' ICFA claim fails because there is no evidence in the

22   record that any of the authorized Honda dealers in Illinois were actually deceived by the

23   [Technical Service Bulletins ("TSBs")]" in a consumer class action (JMOL Br. 18–23, Dkt.

24   No. 382).  Obviously, however, there is no requirement to have every intermediary in a chain

25   of distribution testify that they were likewise deceived by a manufacturer's omission.

26   Defendant does not cite a decision reflecting that proposition, instead relying on decisions

27   finding no actual deception based on "alleged deception of unspecified persons having no

28   demonstrated connection to their [products] or to themselves."  *De Bouse v. Bayer*, 922 N.E.2d

309, 315 (Ill. 2009) (quoting *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 219 (Ill. 2004)).  Those decisions concerned the inadequacy of a "market theory" premised on fraud on the market generally.

This order holds that when a manufacturer sells cars with a material design defect to the consuming public, it is enough for class plaintiffs to prove that a reasonable consumer would have been misled by the failure to disclose the defect without further proof as to the extent to which intermediaries were or were not in on the fraud.

### D.    Alternative Motion for a New Trial.

> Rule 59(a) states, "A new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." . . . Historically recognized grounds include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving."

*See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citations omitted).

Given the foregoing analysis, the jury's verdict is not contrary to the clear weight of the evidence, and a new trial will not be granted on that basis.  Defendant separately moves for a new trial on the basis that the district court erred in its jury instruction regarding one element of the ICFA claim:

> [T]he jury instruction on the ICFA claim did not require Plaintiffs to prove that the defect posed a safety hazard; it only required proof "[t]hat a reasonable consumer would have acted differently at the time of sale if they had known of the defect, or that the defect concerned the type of information a reasonable consumer would be expected to rely on in purchasing a Class Vehicle."  ECF No. 355, at 7:17–20. . . . But without an instruction tying the defect to a safety hazard, the jury was left with no guidance on "materiality" and both an undefined "defect" and "omission."  *See supra*, Section I.A.3 (noting questions left unanswered by Plaintiff Feeney's abandonment of the safety-hazard theory of materiality) & p. 7 n.1.  As evidenced by the disparate verdicts on the California and Illinois claims, both of which as-certified required a showing of a defect resulting in an unreasonable safety hazard, the combination of Plaintiffs' eleventh-hour abandonment of their safety-hazard theory of liability and the lack of an instruction on materiality "likely fostered confusion among jurors."  *Experience Hendrix*, 762 F.3d at 847.

(JMOL Br. 23–25).

Honda is just wrong in insisting that plaintiffs had abandoned all theories other than *safety*.  Yes, safety has always been an important part of this case, but plaintiffs never limited their theory to a single arrow.

Contrary to defendant's assertion, the instructions explained that the jury was required to find, as to the Illinois class, "[t]hat a reasonable consumer would have acted differently at the time of sale if they had known of the defect, or that the defect concerned the type of information a reasonable consumer would be expected to rely on in purchasing a Class Vehicle" (Final Charge to the Jury 7, Dkt. No. 355).  And, "[a] material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Connick*, 675 N.E.2d 584, 595 (Ill. 1996).  It is not likely there was confusion on that basis, as the jury was in fact instructed on the differing standards under the laws of each state.  Defendant's renewed motion for judgment as a matter of law and alternatively for a new trial is **DENIED**.

### 3.   PLAINTIFFS' MOTION TO ALTER JUDGMENT.

Plaintiffs move to alter the judgment in favor of the Illinois Class awarding $1,398,624 to include pre-judgment interest.  The parties do not dispute that post-judgment interest is mandatory.  The dispute is over whether to apply California or Illinois law to determine whether pre-judgment interest is warranted.

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001); *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  "California follows a three-step 'governmental interest analysis' to address conflict of laws claims and ascertain the most appropriate law applicable to the issues where there is no effective choice-of-law agreement." *Washington Mut. Bank, FA v. Superior Ct.*, 15 P.3d 1071, 1080 (Cal. 2001).

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.  Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.  Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Dent v. Nat'l Football League*, No. C 14-02324 WHA, 2021 WL 3885954, at *9 (N.D. Cal. Aug. 31, 2021) (citation omitted), *aff'd*, 2023 WL 2983580 (9th Cir. Apr. 18, 2023).

The parties agree that under California law, pre-judgment interest applies to the tune of seven percent per annum.  Defendant argues that plaintiffs are not entitled to pre-judgment interest at all under Illinois law, and plaintiffs concede that under Illinois law such award "would be discretionary" (Alter Judgment Reply 2, Dkt. No. 397).  The laws of California and Illinois are thus materially different at step one, and this order proceeds to step two.  *See Washington Mut. Bank, FA*, 15 P.3d at 1080–81.

Under the second step, a true conflict does not exist.  This action consists of a California class of plaintiffs as well as an Illinois class of plaintiffs.  The prevailing class in question consists of all persons who purchased a class vehicle from an authorized Honda dealer in Illinois, recovering under Illinois's consumer fraud statute.  "Despite materially different laws, 'there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied.'"  *Ibid.* (citations omitted).  As to the Illinois class, only Illinois has an interest in having its law applied, so this order applies Illinois law in determining pre-judgment interest.

"Under Illinois law, statutory interest can be recovered at the discretion of the court." *ITQ Lata, LLC v. MB Fin. Bank, N.A.*, 317 F. Supp. 2d 844, 860 (N.D. Ill. 2004) (Judge Morton Denlow) (citing *Bank of Chicago v. Park Nat. Bank*, 660 N.E.2d 19, 23 (Ill. App. Ct. 1995)).  Plaintiffs concede that the ICFA "may not explicitly authorize prejudgment interest," but nevertheless argue that "a district court may exercise its discretion to award prejudgment

United States District Court
Northern District of California

10

interest on an ICFA claim under the Illinois Interest Act" (Alter Judgment Reply 7).

Defendant argues that the Illinois Interest Act does not apply.  The Illinois Interest Act states:

> Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment.

815 Ill. Comp. Stat. 205/2 (2023).  In any event, "[t]he decision to award prejudgment interest rests in the trial court's discretion; the purpose of prejudgment interest is to compensate plaintiffs for the lost time value of money." *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1243 (7th Cir. 1988).  This order declines to find the Illinois Interest Act applicable here.  Plaintiffs' motion to alter judgment is **DENIED**.

### 4.    PLAINTIFF'S MOTION FOR ATTORNEY'S FEES.

Our final judgment awarded the 2,571 Illinois class plaintiffs a total of $1,398,624.  Class counsel moves for $4,888,922.50 in attorney's fees and reimbursement of costs in the amount of $680,291.93, subsequently reduced slightly to $4,760,391.25 and $618,618.63, respectively, upon reply briefing "in light of certain clerical errors, and as an accommodation to Honda" (Fees Reply 2, Dkt. No. 393).  Class counsel also moves for a $5,000 class representative award for Illinois class representative Marissa Feeney.

Illinois law governs.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  "Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees." *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).  Both sides agree that attorney's fees and costs may be awarded under the ICFA to a prevailing party, and because "the word 'may' ordinarily connotes discretion . . . attorney fee awards are left to the sound discretion of the trial court." *Krautsack v. Anderson*, 861 N.E.2d 633, 643 (Ill. 2006) (quoting 815 Ill. Comp. Stat. 505/10a).

United States District Court
Northern District of California

Defendant requests that fees and costs be denied altogether, citing a decision that explained such denial was warranted where "plaintiff was guilty of 'overreaching,' as shown by the fact that its $1,115,000 verdict was a 'pittance' of the $25.6 million plaintiff asked the jury to award" (Fees Opp. 5, Dkt. No. 387 (quoting *Oshana v. Coca-Cola Co.*, 487 F. Supp. 2d 961, 974 (N.D. Ill. 2007) (Judge Suzanne B. Conlon))). That reasoning is inapplicable here, where a damages award was stipulated to and entirely consistent with the theory of liability. The jury found Honda liable on the Illinois claim, so the question is how fees and costs should be adjusted relative to damages, and not whether there should be fees and costs at all.

"The most useful starting point for determining the amount of a reasonable fee is the lodestar; that is, the product of the number of hours reasonably expended by counsel for the prevailing party, in this case the plaintiff, multiplied by a reasonable hourly rate." *Aliano v. Transform SR LLC*, 167 N.E.3d 665, 678 (Ill. App. Ct. 2020) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986)). Plaintiffs' asserted lodestar amount is $4,888,922.50, which class counsel represents already reflects certain deductions for attorney time "administrative in nature" and for "entries that appeared on their face exclusively related to California or equitable claims" (Fee Br. 10, Dkt. No. 377). It also reflects "an across the board 30-percent reduction to all time entries relating to Honda's motion to dismiss and motion for summary judgment, since these two briefings contained multiple sections focused exclusively on non-Illinois claims" (*ibid.*).

Defendant challenges the lodestar on three fronts: (1) that it improperly includes fees for failed, non-ICFA claims; (2) that class counsel's rates are inflated; and (3) that class counsel has not submitted sufficient information to evaluate the lodestar figure (Fees Opp. 6–11).

Class counsel asserts that their lodestar amount should not be subject to reduction, and that Illinois law supports granting requested fees three and a half times the total class recovery. They cite the Illinois Supreme Court having explained that:

> A claim for statutory attorney fees is as much a "claim for relief" under this rule as is a prayer for damages. Indeed, in consumer fraud cases the attorney fee awards can easily constitute the largest part of a plaintiff's recovery. The legislature realized this when it enacted the fee-shifting provision of the Consumer Fraud Act.

United States District Court
Northern District of California

> That provision is premised on the recognition that plaintiffs would
> be reluctant to seek redress for consumer fraud if the recovery
> would be nearly or completely consumed by attorney fees and was
> designed to encourage plaintiffs who have a cause of action to sue
> even if recovery would be small.

*Cruz v. Nw. Chrysler Plymouth Sales, Inc.*, 688 N.E.2d 653, 657 (Ill. 1997) (citing *Haskell v. Blumthal*, 561 N.E.2d 1315, 1318–19 (Ill. 1990)).  That decision was not a class action but an individual plaintiff, and ultimately focused on whether attorney's fees belonged in arbitration. *Ibid.*  In holding that arbitration proceedings should scrutinize attorney's fees, the Illinois Supreme Court explained:

> The determination as to whether fees should be awarded under the
> Consumer Fraud Act involves consideration of the time and labor
> required, the novelty and difficulty of the questions involved, the
> experience and ability of counsel, the skill necessary to perform
> the legal services rendered, the customary fees charged for such
> services, and the benefits resulting to the client. . . . Virtually all of
> these factors require direct knowledge of the underlying litigation
> and counsel's performance.

*Ibid.* (citing *Chesrow v. Du Page Auto Brokers, Inc.*, 557 N.E.2d 1301, 1303 (Ill. App. Ct. 1990)).

Implicit in those factors listed by the Illinois Supreme Court is the understanding that attorney's fees under the ICFA — even if they may be the largest part of a plaintiff's recovery — are nevertheless subject to scrutiny relative to benefits conferred and overall dynamics of the litigation.  True, proportionality *alone* is not necessarily dispositive particularly in the consumer fraud context in Illinois, and plaintiffs cite decisions awarding fees many times the recovery.  *See Aliano*, 167 N.E.3d at 678 (presuming $106,322 lodestar reasonable on $3.10 judgment);  *Demitro v. Gen. Motors Acceptance Corp.*, N.E.2d 1163, 1172 (Ill. App. Ct. 2009) (affirming $53,101 in fees on $7,560.06 recovery); *Totz v. Cont'l Du Page Acura*, 602 N.E.2d 1374, 1376 (1992) (affirming $19,674.60 in costs and fees on $407.50 of compensatory damages and $5,000 of punitive damages).

None of those cases, however, involved class actions, nor did they contextualize the individual prevailing claim against any that failed.  The class action mechanism mitigates the concern that may otherwise weigh in favor of a fee award many times the recovery, which is

13

1    that "it would be difficult for injured consumers to obtain counsel in light of the sums of

2    money that are in dispute in most consumer fraud litigation."  *Totz*, 602 N.E.2d at 1387.

3           The policy at the very core of the class action mechanism is to
            overcome the problem that small recoveries do not provide the
4           incentive for any individual to bring a solo action prosecuting his
            or her rights.  A class action solves this problem by aggregating the
5           relatively paltry potential recoveries into something worth
            someone's (usually an attorney's) labor.
6

7    *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit*

8    *Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

9           However, the fundamental distinction here is that within the context of a class action, this

10   litigation also involved many claims that failed, and many hours of attorney time tied to those

11   failed efforts.  While plaintiffs ultimately recovered on the Illinois Repair class, as explained

12   above they lost on the Illinois New and Used Purchasers class at summary judgment, which

13   asserted the exact same ICFA claims.  Plaintiffs also lost on the California class at trial.  The

14   Illinois New and Used Purchaser class comprised of 43,253 members (Schwartz Decl. ¶ 10,

15   Dkt. No. 287-1).  Compared against the prevailing Illinois Repair class of 2,571 members,

16   class counsel ultimately recovered only for 5.6% of the Illinois consumers initially certified on

17   identical ICFA claims.

18          Class counsel acknowledges that "[i]n a case involving both prevailing and non-

19   prevailing plaintiffs, the lodestar calculation should exclude separable work performed on

20   behalf of non-prevailing plaintiffs; but may include all intertwined work that would have been

21   necessary for litigation of the prevailing plaintiffs' claims" (Fees Reply 4).  To that end, class

22   counsel in calculating their lodestar "deleted entries that appeared on their face exclusively

23   related to California or equitable claims" by performing word searches, "applied an across the

24   board 30-percent reduction to all time entries relating to Honda's motion to dismiss and motion

25   for summary judgment, since these two briefings contained multiple sections focused

26   exclusively on non-Illinois claims," and "deleted entries concerning Honda's motion to strike

27   the Amended Complaint's nationwide allegations since a nationwide class was not pursued"

28   (Fees Br. 10).

                                              14

Class counsel does not explain how the failed ICFA claims factored into their lodestar calculation. Class counsel's argument focuses entirely on the fact that "the work relevant to the California and Illinois claims was heavily intertwined," merely asserting — without explanation — that "[t]his work would have been largely the same even if Class Counsel had pursued claims only for the Illinois Repair Class from the outset" (Fees Br. 12, Dkt No. 377). But as laid out, over 94% of Illinois consumers initially certified for class treatment are non-prevailing plaintiffs. While the ICFA claims asserted may be identical, plaintiffs provide no explanation for how the lodestar calculation excludes any work as to these plaintiffs. "[I]t is not the case that 'all counts in a consumer action tried together are compensable' — the party seeking fees must do more than show that 'some of the evidence was the same.'" *Straits Fin. LLC v. Ten Sleep Cattle Co.*, 900 F.3d 359, 373–74 (7th Cir. 2018) (quoting *Schorsch v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 677 N.E.2d 976, 979 (Ill. App. Ct. 1997)). "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Because plaintiffs fail to isolate "the number of hours reasonably expended by counsel *for the prevailing party*," reduction of plaintiffs' lodestar amount is warranted. *Aliano*, 167 N.E.3d at 678 (emphasis added).

The non-prevailing ICFA class was dismissed at summary judgment, after which trial ensued. Class counsel claims 4,727.21 hours of attorney time outside of the tasks "Trial & Trial Preparation" and "Motions — Post Trial," representing $3,026,853.75 of asserted lodestar fees (Fee Br. 9–10). Class counsel asserts that all of this time applies equally to the ICFA claims despite the different class theories (one class has paid for repairs while the other has not). But the difference in theory was reflected throughout the course of litigation: for example, the Repair class could depend on out-of-pocket receipts and testimony regarding the VTC rattle that manifested, but the New and Used Purchaser class could not, instead relying on statistical analysis via plaintiffs' expert. Indeed, in that example alone the New and Used Purchaser class had a much more difficult legal theory and evidentiary burden, difficulties that proved insurmountable at summary judgment. Class counsel's hours spent on the ICFA claims

15

should therefore reflect the proportions of the substantively different Illinois ICFA classes, and this order accordingly reduces those hours by 94%. This results in 282.63 hours of work for $181,611.23 in fees.

Class counsel also claims 2,218.30 hours of work for trial preparation and trial itself, representing $1,782,796.25 in lodestar fees alone. True, the evidence presented at trial largely applied to both the California and the Illinois class. As this order explains however, the laws of California and Illinois as they relate to this action differ substantively, not to mention each class representative testified at trial on behalf of their class claims. This order takes class counsel's cue and likewise applies a 30% reduction as an approximation for the proportion of time spent on exclusively non-Illinois claims for trial. This results in 1,552.81 hours of work for $1,247,957.38 of lodestar fees. Adding back in the pre-trial amount this order finds reasonable and the amount asserted for post-trial motions, this order finds a lodestar of 1,934.64 attorney hours for a total of $1,508,841.10.

As this order lays out above, the jury verdict is consistent with how California and Illinois law differ in crucial ways. Plaintiffs expended much effort in trying to prove the theory that the VTC rattle was a safety defect under California law, which is demonstrably a higher burden than materiality under Illinois law. Indeed, class counsel's focus on that front forms the basis for Honda's attacks on the jury verdict. Since the Illinois class for which proof of injury was more illusory had already been culled, in the judgment of this district court the Illinois class claim that plaintiffs prevailed on was relatively simple within the context of this litigation. As such, this order applies a 20% reduction to the lodestar amount and grants $1,207,072.88 in attorney's fees.

The award of costs under the ICFA is likewise subject to the sound discretion of the trial court. *See Krautsack*, 861 N.E.2d at 643 (quoting 815 Ill. Comp. Stat. 505/10a). On reply, plaintiffs submitted an amended bill of costs which addressed many of Honda's objections, resulting in a total ask of $618,618.63. The amended bill of costs thus functions as our operative bill of costs.

United States District Court
Northern District of California

1    The major point of dispute here is whether expert fees are recoverable costs under the

2 ICFA.  Illinois courts have held, in no uncertain terms, that "[t]he ICFA does not explicitly

3 provide for an award of expert costs.  Those costs are not awardable, and for that additional

4 reason we recommend that the district judge deny them."  *Oshana v. Coca-Cola Co.*, 487 F.

5 Supp. 2d 961, 979 (N.D. Ill. 2007) (Judge Suzanne B. Conlon).  This is because "[w]ith regard

6 to the award of expert witness fees, the [Illinois] supreme court has held that the fees charged

7 by expert witnesses are not recoverable under statutory provisions that permit a prevailing

8 party to recover costs."  *TruServ Corp. v. Ernst & Young, LLP*, 876 N.E.2d 77, 85 (Ill. App. Ct.

9 2007) (citing *Vicencio v. Lincoln-Way Builders, Inc.*, 789 N.E.2d 290, 293–95 (Ill. 2003)).

10 Plaintiffs cite a Seventh Circuit decision which nevertheless awarded expert fees to a

11 prevailing party on RICO and ICFA claims.  *See Uniroyal Goodrich Tire Co. v. Mut. Trading*

12 *Corp.*, 63 F.3d 516, 526 (7th Cir. 1995).  Subsequent Illinois court decisions have aptly

13 distinguished *Uniroyal*:

> Plaintiff's citation to *Uniroyal Goodrich Tire Co. v. Mutual
> Trading Corp.*, 63 F.3d 516 (7th Cir.1995), does not support
> plaintiff's position that such fees are awardable.  In that case, it
> appears that the Seventh Circuit awarded fees under the RICO
> statute, not the ICFA statute.  Moreover, [*T.D. v. LaGrange Sch.
> Dist. No. 102*, 349 F.3d 469, 482 (7th Cir. 2003)] and [*Uphoff v.
> Elegant Bath, Ltd.*, 176 F.3d 399, 403 (7th Cir. 1999)] are more
> recent and more explicit pronouncements of the Seventh Circuit's
> views on this matter . . . .

19 *Oshana*, 487 F. Supp. 2d at 979.  This order finds no reason to disagree, and finds expert fees

20 excluded from costs here.  The expert fees form the lion's share of class counsel's claimed

21 costs, at $300,539.35 (Godino Decl. ¶ 53, Dkt. No. 378).

22    Two other costs are denied.  Plaintiffs' trial equipment rental share of $1,500 is not

23 recoverable, because while "Local Rule 54-3(d)(5) allows for the costs of preparing charts,

24 diagrams, videotapes, and other visual aids, it does not include the cost of renting equipment to

25 present the visual aids."  *Minor v. Christie's, Inc.*, No. C 08-05445 WHA, 2011 WL 902235, at

26 *24 (N.D. Cal. Jan. 29, 2011), *R. & R. adopted*, 2011 WL 902033 (N.D. Cal. Mar. 14, 2011).

27 Plaintiffs also include costs for witness checks of two witnesses that the parties agreed did not

28 need to attend trial, so those checks were never cashed.  Plaintiffs assert that "[u]pon Honda's

confirmation that it has destroyed the checks or upon the time that the checks become stale, Plaintiffs will withdraw these costs from their bill of costs" (Godino Decl. ¶¶ 35–36, Dkt. No. 398-1).  Honda confirms that it has destroyed the checks (Delgado Decl. ¶ 3, Dkt. No. 402-1). Claimed witness fees of $603.35 are thus denied.  All told, class counsel is awarded $315,975.93 in costs.

Because this order decides the motions for which Honda's ultimate liability in this action may still depend, Honda's asserted basis to stay deciding whether it should pay for class administration costs going forward no longer applies (Fees Opp. 20).  In any event, "the proper placement of notice costs is best left to the sound discretion of district courts, once liability on the merits has been determined in the first instance."  *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1144 (9th Cir. 2009).  This order finds that Honda bears the administration costs of the prevailing Illinois class.

Finally, the requested class representative award for Ms. Feeney is **DENIED**.  Class representatives should stand shoulder to shoulder with the class members they represent. Indeed, Ms. Feeney's claims were the same as those of the class, and all class members recovered equivalent amounts.  No additional award is needed.

In sum, to the extent stated above, plaintiffs' motion for attorney's fees is **GRANTED IN PART AND DENIED IN PART**.  Class counsel is **AWARDED** $1,207,072.88 in attorney's fees and $315,975.93 in costs for a total of **$1,523,048.81**.

### 5.  MOTIONS TO SEAL.

There is a strong public policy in favor of openness in our court system and the public is entitled to know to whom we are providing relief (or not).  *See Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178–80 (9th Cir. 2006).  "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point."  *Ibid.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  Access to motions and their attachments that are "more than tangentially related to the merits of a case" may be sealed only upon a showing of "compelling reasons" to do so.  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101–02 (9th Cir. 2016).  Filings that are only

tangentially related to the merits may be sealed upon a lesser showing of "good cause." *Id.* at 1097.

Defendant moves to seal documents relating to various motions *in limine* (Dkt. No. 294). As explained at the final pretrial conference, all those motions *in limine* were denied, and the documents sought to be sealed were not needed for those determinations. The filing in question is thus tangentially related to the merits, and good cause is sufficient. The sought redactions target identifying information of customers and non-party vehicle owners in Honda data, or confidential business information from an expert report. Good cause exists to seal, and defendant's motion is GRANTED (Dkt. No. 294).

Plaintiffs move to seal their filing of attorney billing records submitted in support of their motion for attorney's fees (Dkt. No. 396). This evidence for class counsel's representations of attorney time allocation was not provided until a month after the initial motion for attorney's fees, filed in a declaration concurrent with reply briefing. Plaintiffs assert that such records contain privileged information which warrants sealing. In any event, this order's reasoning on attorney's fees did not depend on scrutinizing class counsel's time entries line by line, so that filing is only tangentially related to the merits. Because such records may implicate privileged information, good cause exists to seal, and plaintiffs' motion is GRANTED (Dkt. No. 396).

## CONCLUSION

For the foregoing reasons, defendant's motions to decertify the class and for judgment as a matter of law or alternatively for a new trial are DENIED. Plaintiffs' motion to alter judgment is DENIED. Plaintiffs' motion for attorney's fees and service award is GRANTED IN PART AND DENIED IN PART. The motions to seal are GRANTED.

IT IS SO ORDERED.

Dated: December 1, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE